**Kimberly RUSSELL n/k/a Kimberly Bichsel, Respondent,**

v.

**Mark RUSSELL, Appellant.**

No. SC 87917.

Supreme Court of Missouri, En Banc.

Jan. 9, 2007.

Jonathan K. Glassman, David G. Waltrip, Chad S. Stockel, Clayton, for Appellant.

Jane E. Tomich, Claude C. Knight, St. Charles, for Respondent.

## MICHAEL A. WOLFF, Chief Justice.

### Introduction

What is the legal standard for modification of a judgment granting joint physical custody of a minor child?

The modification in this case, as in many such cases, involves scheduling of time between mother and father. The statute governing modifications of custody judgments requires that there be a change in circumstances and that the modification be in the best interest of the child. For visitation questions, the statute requires simply that the proposed change be in the best interest of the child.

A brief impressionistic history will illustrate the problem that currently divides some of the courts in our state. A few generations ago, a marriage not ended by death could be terminated with a judgment of "divorce." A divorce judgment, where there were minor children subject to the court's jurisdiction, awarded custody of the minor children to one parent or the other, and the noncustodial parent would in most circumstances be granted visitation rights. Statutes of this earlier era embodied a common law preference for custody by the mother, with visitation by the father. The mother would be granted custody unless she was shown to be unfit. A change in custody could not be granted unless there was a "substantial" change in circumstances that justified changing the judgment to grant sole custody to the person who was not given custody in the original decree. With proper respect to the finality of judgments, such changes in circumstances were not recognized as sufficient unless they were "substantial" and unknown or unforeseen at the time of the original judgment. Visitation rights, on the other hand, could be modified simply by showing that the modification was in the best interest of the child. In sole-custody divorce judgments, modification of visitation typically did not involve questions of parental fitness and, thus, did not involve fundamental changes in a court's original judgment.

Modern marital statutes changed the terminology of the harsh term "divorce," which typically was granted on grounds that one party had wronged the other. "Divorce" gave way to the softer Latinicized word "dissolution," accompanied by elimination of the requirement that one party be proved at fault for the failure of the marriage. More significantly, modern statutes provide for joint physical custody between the two parents and, of course, have eliminated the gender-biased preference of the one parent over the other. The statute modifying judgment in a joint custody situation requires a "change in

circumstances," but, as in previous statutes, the word "substantial" does not appear. The idea that a change must be "substantial" remains from the earlier era when a change in judgment was governed by judicial notions of respect for judgments embodied in the doctrine of *res judicata*. That some courts have read the word "substantial" into the statute is a tribute to the persistence of judicial respect for the finality of judgments, and an indication that new law is sometimes obscured by a thorough knowledge of old law.

■ Today, the proper standard for modification of a joint physical custody judgment is that found in sec. 452.410.1.[1] The word "substantial" does not appear in sec. 452.410.1 and should not be read into the statute for changes of scheduling parenting time between mother and father.

■ The statute recognizes that changes in circumstances can, as in the visitation context, justify modifying a judgment so that the arrangements are in the best interest of the child. That is the proper standard to use in all cases, except where one party is seeking to revise or modify a judgment to deprive one custodial parent of custody altogether, that is, a change from a joint custody decree to a judgment with sole custody. A motion to change from joint custody to sole custody is premised upon a change in the factual underpinnings of the original judgment; in such circumstances it is fitting for courts to respect the finality of such judgments and to be unwilling to alter such judgments fundamentally without a showing that the change in circumstances is indeed substantial.

With that overview, the Court reviews the facts of this case and the statutes that apply.

### Facts and Procedure

The Russells' marriage was dissolved in 2000. The couple had one child during the marriage, a daughter born in July 1997. The parties' original dissolution judgment related to child custody, child support, and payment of the child's education expenses, among other things.

In the dissolution, mother and father were awarded "joint legal and physical custody" of the child. Father was awarded physical custody "[e]very weekend beginning at 6:00 p.m. Friday" through the following Monday morning, on alternating holidays and special days, and for one-half of the child's summer vacation.

Mother filed a motion to modify the dissolution judgment, seeking a rearrangement of father's physical custody award, an increase in father's child support obligation, and reimbursement from father for some of the child's private school tuition. Mother also asked that the court grant her the dependent tax deduction for the child each year and award her attorney's fees and costs. After a hearing, the trial court entered a modification judgment granting in part and overruling in part mother's motion to modify. The trial court later modified its judgment, rearranging the parental custody schedule.

The circuit court made the following findings of fact regarding the mother's changed circumstances. At the time of the dissolution, mother was working part-time on the weekends and the child, then three years old, was not in school so that mother and the child were together every day during the week. Because of this, father was awarded physical custody from 6:00 p.m. Friday through 11:00 a.m. the following Monday every weekend, other than

---

1. Unless otherwise noted, all references are to RSMo 2000.

certain holidays and a part of the summer. Since the entry of the dissolution judgment, mother has become employed full time working from 8:00 a.m. until 4:30 p.m., Monday through Friday, and the child is attending school five days a week full time.

The circuit court's findings of fact detail changes in the father's circumstances. Since the entry of the dissolution judgment, father has had National Guard duty one weekend per month from 7:00 p.m. until approximately 3:00–4:00 p.m. Saturday and Sunday of that weekend. Father was called to active duty on March 1, 2003, until approximately February 18, 2004, and was outside of the St. Louis area during this period, except for ten days in June 2003. During father's active duty, mother had custody of the child on many of father's weekends.

The trial court also found that during the period of time between the entry of the dissolution judgment until father's call to active duty, the parties did not adhere strictly to the weekend physical custody schedule. Since the dissolution, father has allowed mother to have custody of the child on some weekends in exchange for other times with father. In addition, father works on Friday night until 10:00 or 11:00 p.m., so that during a portion of the father's custody time on Friday nights, the child is actually in the custody of father's sister.

The circuit court's conclusions of law recognized a change of circumstances so as to make the original physical custody arrangement of the parties not in the child's best interest. The court changed the parental schedule with father having the child on Saturday at 9:00 a.m. every weekend except one weekend per month. In a modified judgment, the court clarified that mother will have the third weekend of each month or father's assigned military drill weekend.

The court also modified the amount of child support, in light of the parties' incomes and the form 14 calculations. The court determined that there had been a change of circumstances consisting of a more than 20% increase from the existing amount of child support; the support amount was increased accordingly. The trial court concluded that father has a better ability to pay a portion of mother's attorney's fees and ordered him to pay $1000 of mother's attorney's fees.

Father appealed the circuit court's order decreasing the amount of time he is awarded physical custody, increasing the amount of child support he must pay, and awarding mother attorneys' fees. The court of appeals, after opinion, transferred the case to this Court under Rule 83.02.

The judgment of the circuit court is affirmed.

## Discussion

Father raises three points of trial court error. First, that the trial court erroneously declared and applied the law by applying the wrong statute in this custody modification case or, in the alternative, the judgment was against the weight of the evidence based on the standard applied by the circuit court. Second, that the trial court's decision to modify child support is not supported by substantial evidence, is against the weight of the evidence, and erroneously applied the law in determining that there has been a 20 percent change in child support because the trial court erred in calculating mother's income and did not make the proper adjustment for father's custodial periods. Third, the trial court abused its discretion in awarding mother's attorney's fees.

**Section 452.410 applies to modification of joint physical custody**

■ Two statutes govern the modification of prior parenting arrangements.[2] Section 452.410 provides the standard for modification of a custody decree, and section 452.400.2 states the standard for modification of a visitation award.

■ As to custody, a court "shall not modify a prior custody decree unless . . . it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." Section 452.410. This Court has stated that the change in circumstances necessary to modify a prior custody decree must be a "substantial" one. *Searcy v. Seedorff,* 8 S.W.3d 113, 117 (Mo. banc 1999). In contrast, to modify a previous order of visitation rights, a court must merely find that the modification would serve the best interests of the child.[3] Section 452.400.2; *Turley v. Turley,* 5 S.W.3d 162, 164 (Mo. banc 1999).

The question here is which modification statute applies to a court's previous award of joint physical custody. A threshold matter in many modification cases will be whether the initial custody arrangement is, in fact, joint physical custody, as defined by statute.[4] In this case, the issue need not be addressed because the initial dissolution judgment appropriately denominates the arrangement as joint physical custody, and that designation is not contested.

■ In resolving this matter, this Court is guided by the statute's definition of "custody." Section 452.375.1(1) defines "custody" for purposes of chapter 452 as including "joint legal custody, sole legal custody, joint physical custody or sole physical custody or any combination thereof." Thus, by definition, a modification of joint physical custody is a custody modification, triggering the application of section 452.410. The statute directs courts to consider a modification of any kind of custody award under the standard contained in section 452.410.

This Court does, however, revisit the question of whether the change in circumstances necessary to modify an award of joint physical custody must be "substantial," a term that is not in the statute. Prior to the 1974 enactment of section 452.410.1, case law required that the change in circumstances substantially and/or materially affect a child. *Searcy v. Seedorff,* 8 S.W.3d 113, 116 (Mo. banc 1999), citing *J.G.W. v. J.L.S.,* 414 S.W.2d 352, 354 (Mo.App.1967); *Application of Shreckengaust,* 219 S.W.2d 244, 247 (Mo.

---

**2.** This Court will affirm the circuit court's decision "if the judgment is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law." *Speer v. Colon,* 155 S.W.3d 60, 61 (Mo. banc 2005). A trial court's determination of custody "is afforded greater deference than other types of cases," but must still be supported by credible evidence. Id.

**3.** Additionally, "the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his or her emotional development." Section 452.400.

**4.** Section 452.375.1(3) defines "joint physical custody." It provides the following:

(3) **"Joint physical custody"** means an order awarding each of the parents significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervision of each of the parents. Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent, continuing and meaningful contact with both parents;

App.1949). A custody modification would only be made if the child's welfare required it. *See Irvine v. Aust,* 193 S.W.2d 336, 342 (Mo.App.1946); *Hawkins v. Thompson,* 210 S.W.2d 747, 751–752 (Mo. App.1948). This requirement appears to be substantially derived from principles of *res judicata* and the concern for finality of judgments. *Hawkins,* 210 S.W.2d at 751.

The substantial and/or material change in circumstances requirement remained viable in the courts even after the adoption of section 452.410.1, despite its omission from the statute. *Searcy,* 8 S.W.3d at 117. The requirement was maintained, in part, based on the desire to "maintain a stable nurturing environment for the child." *Id.* This body of law arose when custody determinations almost exclusively resulted in one parent having sole custody with the other parent granted visitation rights. A change from sole custody in one parent to sole custody in another parent is drastic, and courts rightly concluded that the modification must be based on a "substantial" change.

The general assembly introduced joint custody as an option in 1983. Section 452.375.3, RSMo Supp.1983; *Margolin v. Margolin,* 796 S.W.2d 38, 48 (Mo.App. 1990). Subsection 3 of that amendment provided: "The court may award joint custody or sole custody to either parent ...," with the 1984 amendments distinguishing between joint physical and joint legal custody. Today, joint physical and legal custody is the preference in dissolution actions. Section 452.375; *Margolin,* 796 S.W.2d at 49–50.

■ This case presents a clear example of one concern created by this legal paradigm shift. Changes such as those the circuit court made here—essentially a few hours a week—are not as drastic as a shift from sole custody of one parent to sole custody of another parent. The require-

ment that the change be substantial is no longer appropriate where simple shifts in parenting time are at issue. Courts should not require a "substantial" change from the circumstances of the original judgment where the modification sought is simply a rearrangement in a joint physical custody schedule. Similarly, the parties and the courts are advised to be clear in the language of the original judgment, as was the case here. The original judgment labeled the custody provisions as joint legal and physical custody, and there is no doubt that the circuit court's description complies with the statutory definition.

■ Although the circuit court in this proceeding incorrectly applied the visitation modification statute, its ultimate decision can be affirmed by applying the correct standard. The evidence shows that a change in circumstances has occurred that warrants a modification of custody arrangements. At the time of the parties' dissolution, mother worked on weekends. Because of this, father had the child on the weekends and mother had the child during the week. This arrangement maximized the time each parent had with the child, who was not then in school. Since the dissolution, however, mother's work schedule changed such that she works regular weekday hours, and the child has started attending school. In addition, the parties have rearranged their custody schedule around father's weekend drill schedule and because of father's military duty. Further, during a portion of the father's custody time on Friday nights, the child is actually in the custody of father's sister. These changes in circumstances are sufficient to support the circuit court's judgment.

This Court also agrees with the circuit court that a modification is in the child's best interest. Because of mother's new job, she was unable to spend the same

amount of time with the child as before. In addition, the child will be able to spend Friday nights with her mother, instead of father's sister, thus maximizing the amount of time the child will spend with a parent. In sum, the evidence shows that a change in circumstances in both the child and the mother has occurred and that the modification is in the best interests of the child.

### The circuit court did not err in calculating mother's income

Father next claims that the circuit court erred in calculating child support by not including mother's higher wage as a phlebotomist, her overtime income, and bonus pay in the form 14 calculation. Father asserts that mother would not have satisfied the standard for child support modification had her income been properly calculated.

■ This Court will affirm the judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). An award of child support is within the sound discretion of the circuit court and this Court will not substitute its judgment for that of the circuit court. *Krost v. Krost*, 133 S.W.3d 117, 119 (Mo.App.2004). The decision to include overtime and bonus compensation is within the circuit court's sound discretion.

■ In the modification judgment, the circuit court calculated mother's gross monthly income as $2,773.00 based on a rate of $16 per hour for forty hours per week. The court did not include bonus or overtime pay in this calculation. Mother testified at trial that she works at Gateway Medical Research and that her rate of pay is $16 per hour for her work as a recruiter. Mother sometimes works as a phlebotom-

ist, making $17 per hour, but she only works drawing blood when she loses time through the week and has to make up hours. Mother also occasionally receives "bonus" compensation by doing extra work drawing blood samples. Mother only does this work when she is needed. The company does not have a set schedule for this work and it is not guaranteed. Additionally, mother only worked these hours to pay for the child's school tuition and will not continue this work if the child does not attend private school. The evidence shows that mother's bonus and overtime compensation is sporadic and not guaranteed. It was within the sound discretion of the trial court to exclude this pay from mother's gross income calculation, especially since the court held that the child will no longer attend private school.

■ Father also challenges the circuit court's decision not to give father an adjustment above ten percent for father's periods of overnight custody. Form 14 provides an adjustment in child support for overnight periods the child will spend with the parent paying support. If the paying parent has custody or visitation of the child between 92 and 109 days per year, the circuit court must make a ten percent adjustment in the child support obligation. *Krost v. Krost*, 133 S.W.3d 117, 120–121 (Mo.App.2004). However, "if the parent obligated to pay child support is or has been awarded periods of overnight visitation or custody of more than 109 days per year," the overnight adjustment may be greater than ten percent. *Id; Hatchette v. Hatchette*, 57 S.W.3d 884, 890 (Mo.App.2001). Under the parenting plan adopted by the trial court, father received 110 days per year of overnight custody. The trial court granted father a ten percent adjustment in child support. The circuit court's decision not to give father a

greater adjustment based on one extra overnight period is not reversible error.

The circuit court did not err in modifying father's child support obligation.

**The circuit court did not abuse its discretion in awarding mother attorney's fees**

 Father argues that the circuit court erred in awarding mother attorney's fees. Generally, parties in dissolution disputes are responsible for paying their own attorney's fees. *Alberswerth v. Alberswerth,* 184 S.W.3d 81, 93 (Mo.App.2006). A circuit court, however, is permitted to award attorney's fees under section 452.355.1, which requires the court to consider "all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action." A trial court's decision to award attorney's fees is reviewed for an abuse of discretion. *Aurich v. Aurich,* 110 S.W.3d 907, 916 (Mo.App.2003). "To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." Id. Financial inability of the spouse to pay attorney's fees is not a requirement for awarding attorney's fees. *Kieffer v. Kieffer,* 590 S.W.2d 915, 918 (Mo. banc 1979). In addition, one party's greater ability to pay is sufficient to support an award of attorney's fees. *Stufflebean v. Stufflebean,* 941 S.W.2d 844, 847 (Mo.App. 1997).

 The court calculated father's gross income as $5,552.00 per month and mother's as $2,773.00 per month. Due to father's considerably higher income, he has a greater ability to pay attorney's fees. The circuit court did not abuse its discretion in awarding mother attorney's fees.

**Conclusion**

The evidence supports the circuit court's modification of the child custody arrangement under the appropriate legal standard. The court's decisions regarding child support and attorney's fees are legally correct and within the court's discretion.

The judgment of the circuit court is affirmed.

All concur.