**Suzanne M. McGAHAN,**
**Petitioner/Respondent,**

v.

**Gerard V. McGAHAN,**
**Respondent/Appellant.**

**No. ED 88447.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 6, 2007.

Nathan S. Cohen, Saint Louis, MO, for Respondent/Appellant.

Jeffrey K. Elnicki, St. Louis, MO, for Petitioner/Respondent.

## SHERRI B. SULLIVAN, J.

### Introduction

Gerard V. McGahan (Father) appeals from that part of the trial court's judgment denying his motion to modify the judgment and decree of dissolution of his marriage to Suzanne M. McGahan (Mother).[1] Father challenges the court's refusal to modify its original award of joint legal and joint physical custody so as to vest sole custody of the parties' minor daughter (Daughter) with Father and its refusal to award him child support. We reverse and remand.

### Background

The marriage of Father and Mother was dissolved on December 14, 1999. In the original judgment of dissolution, the parties were awarded joint legal and joint physical custody of Daughter and the parties' son (Son). Father was ordered to pay child support to Mother for Daughter and Mother was ordered to pay child support to Father for Son.[2] The dissolution judgment was modified on November 19, 2001, inter alia, awarding sole physical custody of Son to Mother, eliminating Mother's obligation to pay child support to Father, and ordering Father to pay Mother child support for both children.

Between January 2002 and May 2003, Mother filed several Motions for Contempt[3] due to Father's failure to pay to her the child support as ordered. On October 18, 2004, Mother filed another Motion for Contempt and a Motion for Reissuance of Warrant and Commitment, requesting that Father be held in contempt for failing to pay child support and his share of certain medical expenses. Following an evidentiary hearing, the trial court granted Mother's Motion for Reissuance of Warrant and Commitment on February 16, 2005, ordering Father

---

1. Mother withdrew her cross-appeal, which related to that part of the judgment finding both parties to be in contempt of court, after this Court entered an order concluding that the contempt judgment was interlocutory and not appealable, because there was no record of an attempt to enforce the judgment by incarceration or otherwise. Mother's cross-appeal, No. ED88526, was thereafter severed from this appeal and dismissed without prejudice by order of this Court on July 18, 2007. Because Mother has withdrawn her cross-appeal and Father's appeal raises no issues concerning the contempt portion of the judgment, we can address the modification portion, which is final for purposes of appeal. See In re the Marriage of Crow and Gilmore, 103 S.W.3d 778, 783 (Mo. banc 2003) (although contempt and modification were consolidated for purposes of receiving evidence, they were separate for purposes of appeal).

2. Son is now emancipated and not a subject of this appeal.

3. These motions were filed on January 25, 2002 (dismissed upon payment of "back child support" by Father); October 25, 2002 (dismissed upon payment by Father); May 7, 2003 (judgment entered on July 22, 2003, holding Father in contempt for failing to pay to Mother the amount required for child support and ordering Father to be incarcerated until the arrearage, plus interest, was paid).

incarcerated until he paid to Mother the amounts due. That same day, Father filed a Motion for Contempt, alleging Mother had failed to pay her share of certain medical and educational expenses.

Mother filed another contempt motion on March 3, 2005, alleging that Father had willfully and intentionally taken Daughter upon his release from incarceration and refused to return Daughter to Mother's custody. On March 17, 2005, Father filed a Motion to Modify, requesting sole legal and sole physical custody of Daughter, termination of his child support obligation, and an order requiring Mother to pay child support to Father for Daughter. In conjunction with that motion, Father filed a Motion to Reduce Sums to Judgment and a Motion for Contempt, again alleging nonpayment of certain medical and educational expenses.

On April 26, 2005, the trial court ordered Mother and Father to adhere to the current court-ordered custody schedule by producing Daughter to each other on or before Wednesday at 5:30 p.m., so as to give each parent the ability to exercise their physical custody rights. It further ordered that each parent should ensure Daughter's attendance at Villa Duschesne by 6:30 a.m. A June 7, 2005 judgment ordered the parents to exchange Daughter, according to the same schedule, at Heritage House, with any failure to do so to be reported to the court and the attorneys of record. However, in August, 2005, without notice to or consent of the court, the parents agreed to discontinue the exchange services of Heritage House and to alter the schedule to allow Daughter to spend weekdays with Father and weekends with Mother. Despite this oral agreement, Father did not produce Daughter for weekend visitation with Mother until after a guardian ad litem (GAL) was appointed by the court to represent Daughter and established an alternate weekend custody schedule.

On January 6, 2006, Father filed a Motion to Amend Motion to Modify by Interlineation, asking the trial court to modify the dissolution judgment by ordering that child support be payable to Father by Mother for Daughter, retroactive to the filing of his March 17, 2005 Motion to Modify and requesting an abatement of his child support obligation prior to that date.

An evidentiary hearing was held on March 8, 2006, regarding the motions filed in February and March of 2005. The hearing transcript reveals the following, as pertinent to the issues on appeal.

In the Statement of Property he submitted to the court in connection with the November 9, 2001 modification, Father indicated that his residence had a value of $160,000 and was encumbered with a promissory note in the amount of $158,000. He also indicated that he had a checking and savings account at Southwest Bank, each of which had a balance of $1,000. However, bank records indicated that he, in fact, had a combined balance of over $150,000 in these accounts on November 9, and that Father did not have a mortgage on his house as of November 2001. Additionally, between August 16 and November 9, 2001, Father received several checks from customers of his business, totaling over $90,000, but did not deposit them until December 21, 2001.

Mother testified that she and Father followed the physical custody schedule set out in their original parenting plan until Mother filed a contempt motion seeking recovery of outstanding child support in November of 2002. Between November of 2002 and February of 2005, Father did not exercise his scheduled visitation with Daughter. He saw Daughter during soccer practices and games and on Sundays for dinner, but exercised no overnight visi-

tation. Father testified that the parties never followed the week-to-week schedule set out in the parenting plan after the 2001 modification because Daughter told him she did not like it and could not do the "back and forth." Father said when he talked to Mother and told her that Daughter needed to live at one home or the other, Mother told him Daughter would never live at his house, so he let Daughter live with her.

When Daughter was in eighth grade, she applied for admission to three Catholic high schools: Nerinx, Ursuline, and Notre Dame. Daughter was very disappointed when she was accepted only at Notre Dame. Although Mother registered Daughter at Notre Dame, she also contacted Nerinx, where Daughter was placed on a wait-list. Mother also contacted St. Joseph's Academy, which was also overenrolled.

In August of 2004, Mother learned that Father had enrolled Daughter in Villa Duschesne. When Mother told Daughter that she could not afford Villa Duschesne, Daughter concluded that Mother did not support her attending there. Daughter began attending Villa Duschesne and Dad transported her between there and Mother's house daily.

Father was incarcerated for nonpayment of support on February 16, 2005, so Mother transported Daughter to Villa Duschesne that morning, and told Daughter that Father had been placed in jail. That night, Daughter stayed at a friend's house. Father was released the following day. He picked up Daughter from the friend's house, drove her to Mother's residence, removed all of Daughter's things from Mother's house without Mother's

knowledge, and took Daughter to his home to live.

Mother filed a Motion for Contempt, demanding return of Daughter. On April 26, 2005, the trial court ordered Father to produce Daughter by the following Wednesday. However, Father did not produce Daughter, and Mother did not see Daughter between February 16, 2005 and June 2005. During August of 2005, the parties exchanged Daughter at the Heritage House for alternate weeks, pursuant to a court order. After school resumed, the visits with Mother discontinued.

The relationship between Daughter and Mother remains very strained and Daughter blames Mother for Father's incarceration. Mother's participation in Daughter's education at Villa Duschesne has been minimal and she has not contributed to the expenses there.

The GAL recommended maintaining the "status quo" for Daughter because she was thriving at Villa Duschesne. Because Daughter was living with Father, and the parents could not communicate regarding joint decisions, the GAL also recommended that Father have sole legal custody.

Following the evidentiary hearing, the trial court specifically opined that Father's request for sole custody of Daughter was motivated by a desire to avoid paying child support, in that Father was content not only to permit Daughter to remain in Wife's physical custody but also to exercise no overnight visitation until Mother enforced his child support obligation. Although the court stated that the current physical custody schedule,[4] under which Daughter resides with Father and spends

---

**4.** As discussed later in this opinion, the trial court's referral to the visitation *actually* exercised by the parties as "the current physical custody schedule" creates confusion as to

what court-ordered legal and physical custody award is in effect. Additionally, it has the potential to create confusion in any subsequent enforcement actions.

weekends with Mother "at this time" served the best interests of the Daughter, it also found that the only changes in circumstances since the last modification of the dissolution of marriage judgment were the direct result of Father's refusal to support Daughter while she lived exclusively with Mother and his refusal to exchange Daughter in accordance with the physical custody schedule and thus did not support modification of the dissolution judgment's provisions for physical custody of Daughter. The court further concluded that no change had occurred in the circumstances of Father and Mother, as custodial parents, or Daughter, as a result of which the best interests of Daughter required that Father be awarded sole physical or legal custody of Daughter.

The court additionally stated that Father "intentionally misrepresented his financial condition at the most recent modification hearing," and specifically found that, as a result of his intentional misrepresentations, Father's description of his current financial condition was not credible.

The trial court determined that, in view of its denial of Father's request for sole physical custody of Daughter, there was not a substantial and continuing change in circumstances since the judgment of dissolution which rendered the amount payable by Father to Mother for Daughter's support unreasonable. It did, however, state that Father's support obligation had been abated continuously since September of 2005 and remained abated during any period during which Father and Mother continued to follow the current physical custody schedule.

## Points on Appeal

Father raises two points on appeal. In his first point, Father claims the trial court erred in overruling his Motion to Modify the original award of joint legal and physical custody because the court erroneously declared and applied the law in determining whether Father met his burden of proof in that: 1) the court applied an incorrect legal standard; 2) the court erroneously focused on Father's alleged wrongful intent; 3) the court did not focus on whether a change had occurred in Daughter's circumstances and whether the modification was necessary to serve her best interests; 4) the record undisputedly showed a change in Daughter's circumstances and that a modification would be in her best interests; and 5) the court wrongfully imposed upon Daughter the alleged "sins" of Father.

In his second point, Father claims the trial court erred in overruling his Motion to Modify with respect to Mother's obligations to pay child support because it erroneously declared and applied the law, in that the court: 1) failed to comply with Section 452.370[5] and Missouri Supreme Court Rule 88.01; 2) neither rejected Father's Form 14 calculations nor performed its own calculations; and 3) failed to perform the Form 14 calculations and ascertain the presumed child support amount and therefore could not make the factual or legal determination as to whether there was a change in circumstances.

## Standard of Review

We affirm the trial court's decision if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Russell v. Russell,* 210 S.W.3d 191, 196 (Mo. banc 2007). A trial court's custody determination is afforded greater deference than other decisions. Id. We will not disturb the trial court's

---

5. All statutory citations are to RSMo 2000, unless otherwise indicated.

determination of custody unless it is manifestly erroneous and the child's welfare demands a different result. *Hamer v. Nicholas*, 186 S.W.3d 884, 886 (Mo.App. W.D.2006). An award of child support is within the trial court's sound discretion. *Russell*, 210 S.W.3d at 198.

## Discussion

A modification of joint physical custody triggers the application of Section 452.410. *Russell*, 210 S.W.3d at 196. Under the standard contained in this statute, a court may not modify a prior custody decree unless it finds, on the basis of facts arising after the decree, that a change has occurred in the circumstances of the child or her custodian and a modification of custody is in the child's best interests. Id. at 197. Father's first point attacks the trial court's determination that no change had occurred in the circumstances of Daughter, Father, or Mother, which would make a modification of the joint custody award necessary to serve Daughter's best interests.

Father's second point attacks the trial court's determination that there had not been a substantial and continuing change in circumstances which rendered unreasonable the amount payable by Father to Mother for support of Daughter.

In this case, the trial court's findings setting out the basis for its determinations as to the issues on appeal and others are ambiguous and conflicting. The trial court's use of language such as "According to [Mother]," "According to [Father]," "In the opinion of the Court." throughout the "Findings and Conclusions" portion of its judgment creates confusion as to what its actual findings and conclusions are.

On page 10, paragraph 30 of the judgment, the trial court concludes that no change has occurred in the circumstances of the parties or Daughter as a result of

which Daughter's best interests require that Father be awarded sole physical custody. Yet, on page 17, paragraph 30(ii), the trial court states "in the opinion of the Court, consistent with the opinion of the guardian ad litem, the current physical custody schedule, under which the minor child resides with [Father] and spends weekends with [Mother], at this time serves the best interests of [Daughter], but, in the opinion of the Court, the only changes in circumstances ... are the direct result of [Father's] refusal to (1) support [Daughter] while, by his own admission, she lived 'exclusively' with [Mother] and (2) exchange [Daughter] 'at any time' in accordance with the physical custody schedule ... and, therefore, do not support modification of the provisions ... for physical custody of [Daughter]." In a footnote to this paragraph, the trial court warns: "[Mother] should not construe this finding as support for the alternate week physical custody schedule in the said judgment of dissolution of marriage; rather, the Court has merely concluded that [Father] failed to meet his statutory burden and that, therefore, the Court has no jurisdiction to implement the current physical custody schedule."

Under the dissolution judgment's provision for physical custody of Daughter, Mother and Father were to exchange Daughter on Wednesdays under an alternate week schedule. Because the November 19, 2001 modification did not change the joint physical custody provision for Daughter, the alternate week schedule **remains** in force. Thus, the "current physical custody schedule" in effect, for purposes of enforcement by the parties, is the joint physical custody alternate-week arrangement provision of the original dissolution judgment, notwithstanding the trial court's recognition of the parties' failure to adhere to the schedule. As previously noted, the

trial court's referral to the altered visitation schedule exercised by the parties as the "current physical custody schedule" creates confusion. This confusion is compounded by seemingly contradictory findings. On the one hand, the trial court states that the current schedule under which Daughter resides with Father during the week and spends weekends with Mother serves the best interests of Daughter and cautions Mother not to conclude that the trial court supported the alternate week physical custody schedule. Yet, the trial court ultimately concludes that no change had occurred in any of the parties' circumstances to require that Father be awarded sole physical custody of Daughter.

Similar contradictions exist concerning the trial court's child support determination. On page 22, paragraph 32, the trial court concluded that "there has not been a substantial and continuing change in circumstances since entry of the said judgment of dissolution of marriage which renders the amount payable by [Father] to [Mother] for support of [Daughter] unreasonable," and entered judgment in favor of Mother and against Father in the amount of $16,796, "which represents the amounts payable . . . for support of the minor children through March 31, 2006," Yet, on page 23, paragraph (f), the trial court states: "In the opinion of the Court, in August, 2005, [Mother] relinquished physical custody of [Daughter] to [Father], and therefore, in the opinion of the Court, in September, 2005, pursuant to Section 452.340.2, [Father's] obligation under the said judgment of dissolution of marriage to pay support to [Mother] for [Daughter] abated." In a footnote to this paragraph, the trial court went even further, stating "In the opinion of the Court, [Father's] obligation . . . has been abated continuously since September, 2005 and remains abated during any period in which, and so long as, [Father] and [Mother] continue to follow the current physical custody schedule." Such a finding of abatement is in absolute conflict with the judgment entered for support through March 31, 2006.

As a matter of some clarification, we feel the need to address the language contained in the judgment concerning abatement, due to its potential to create confusion concerning the legally enforceable physical custody schedule. Despite its explicit ruling that there had not been a substantial and continuing change in circumstances rendering the existing support award unreasonable, the trial court stated that Father's support obligation had been abated continuously since September of 2005 and remained abated during any period during which Father and Mother continued to follow the "current physical custody schedule." We presume this is a referral to the visitation schedule purportedly orally agreed to by the parties, under which Daughter resides weekdays with Father and weekends with Mother. This referral to the visitation actually exercised by the parties as "the current physical custody schedule" has the potential not only to create confusion to all concerned as to what physical custody award is in effect, but also to present difficulty in any subsequent enforcement actions.

Our concern with the trial court's abatement language is two-fold. First, and significantly, Section 452.340 provides for abatement of child support obligations only in two specific situations: 1) where one parent has *voluntarily* relinquished physical custody of a child to the parent ordered to pay child support, notwithstanding any periods of visitation or temporary physical and legal and physical or legal custody pursuant to a judgment of dissolution, legal separation, or any modification thereof; or 2) where a trial court finds that a parent has, without good cause, failed to

provide visitation or physical and legal or physical or legal custody to the other parent pursuant to the terms of a judgment of dissolution, legal separation, or any modification thereof. As to both of these grounds, there was conflicting evidence at trial and inconsistent findings by the trial court.

Second, despite its finding that there had not been a substantial and continuing change in circumstances rendering the child support award unreasonable, the trial court's subsequently stated opinion that the child support would remain abated during any period during which the parties continued to follow the "current physical custody schedule" could indicate to the parties that Father's support obligation terminated in September 2005. As noted, such a finding would be contradictory in that the judgment awarded Mother $16,796.00 as the amount payable by Father to Mother for Daughter's support through March 31, 2006. Furthermore, under the current physical custody schedule legally in effect, that is, the alternate week joint custody arrangement, there would be no basis for abatement if the parties actually followed the "current physical custody schedule." Although we presume the trial court meant this to be a referral to the visitation schedule purportedly agreed to by the parties, under which Daughter resides weekdays with Father and weekends with Mother, there is no legal order setting out such a schedule.

█ Nevertheless, we will not speculate on what grounds the trial court ruled by sifting through such inconsistent findings. *In re Marriage of Maninger*, 106 S.W.3d 4, 12 (Mo.App. E.D.2003). A judgment based on inconsistent and ambiguous findings does not allow for adequate appellate review and must be reversed and remanded. *Id.* On remand, the trial court should clarify its actual findings and conclusions, exclusive of any "opinions" intended to be non-binding upon the parties, in a manner consistent with this opinion. To determine the resolution of the custody and support issues, the trial court may receive additional evidence as to Daughter's and the parties' current circumstances and actual financial situations, so as to enable it to prepare a Form 14 calculation in conformity with the applicable guidelines, instructions, and rules.

### Conclusion

The trial court's judgment is reversed and remanded.

MARY K. HOFF, P.J., and GEORGE W. DRAPER III, J., concur.