Douglas A. GRAY,
Petitioner/Appellant,

v.

Marlene A. GRAY,
Respondent/Respondent.

No. ED 89228.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 4, 2007.

Kellie Patterson Evans, Saint Louis, MO, for Petitioner/Appellant.

Nancy E. Emmel, Clayton, MO, for Respondent/Respondent.

SHERRI B. SULLIVAN, J.

*Introduction*

Douglas A. Gray (Father) appeals from the trial court's modification of the provisions concerning the parties' custody plan for their minor child (Son), child support for Son, and allocation of Son's uncovered medical expenses in the judgment dissolving his marriage to Marlene A. Gray (Mother). We affirm in part and reverse and remand in part.[1]

*Background*

The parties were married on December 22, 2000, and separated on May 15, 2001.

---

1. Appellant's Motion to Strike Respondent's Statement of Facts is hereby denied.

Son was born on August 1, 2001. A hearing on Father's Petition for Dissolution of Marriage was conducted on June 24, 2002. Evidence was adduced and the cause was taken under advisement pending the submission of a proposed judgment for the trial court's signature. However, the court received no proposed judgment, and consequently prepared its own Findings, Recommendations and Judgment of Dissolution of Marriage (Judgment of Dissolution). The parties' marriage subsequently was dissolved on December 18, 2002.

Pursuant to the terms of the Judgment of Dissolution, the parties were awarded joint legal and physical custody of Son, Father was ordered to pay the sum of $607 monthly as child support, and each party was ordered to pay one-half (1/2) of any uncovered medical or dental expenses incurred on Son's behalf. The parties' custody plan provided that Father would have physical custody of Son from Friday at 6:00 p.m. through Monday at 6:00 p.m., and Mother would have physical custody of Son from Monday at 6:00 p.m. through Friday at 6:00 p.m. The custody plan also provided that the parties would divide summer vacation periods equally.

Thereafter, Father filed a Motion for Contempt and an Order to Show Cause on January 9, 2004. On August 5, 2004, Mother filed a Motion and Affidavit to Modify Decree of Dissolution (Motion to Modify). Father then filed a Motion for Family Access Order on October 25, 2004, and a Counter–Motion to Modify Judgment of Dissolution of Marriage (Counter–Motion to Modify) on October 26, 2004.

A hearing was conducted on April 24, May 3 and June 5, 2006. As pertinent, the following evidence was adduced. Mother was born and raised in Peru. Mother and Father began their relationship over the Internet. They became engaged three months later when Father traveled to Peru to meet Mother. Nine months later, Mother came to the United States and married Father. Mother and Father had difficulty communicating because neither spoke the other's language. Son has two half-siblings, an older brother who lives with Mother, and an older sister who lives with Father.

At the time of the divorce, Mother was living in a shelter with Son and his older brother. The Form 14 worksheet reflected that Mother had no gross income and that Father had gross monthly income of $4207. On the Form 14, Father was given a credit of $312 for other children in his primary physical custody; Mother was given no corresponding credit due to her reported lack of income.

Mother currently works full-time as a Spanish teacher for a private school, making $17,000 yearly.

Son, who was four years old at the time of the hearing, attends the Youth In Need Preschool, at a cost of $345 monthly. Son attends preschool between 6:30 a.m. and 4:00 p.m. Mother wants to send him to St. Joan of Arc, a private Catholic school, when he begins kindergarten. Son was baptized in a Catholic church when he was born and Mother is raising him Catholic. Father takes Son to a Protestant church.

Mother and Father are unable to communicate regarding decisions for Son, including those concerning his education and religious upbringing. They also could not cooperate regarding the exchange of Son and required the services of Heritage House to facilitate the custody exchanges without face-to-face interaction. After Father indicated that he was dissatisfied with Heritage House's services and that he would not return to their facility for exchanges, Heritage House closed the parties' case.

Stacie Bunning, M.D. (Bunning), a licensed clinical psychologist employed by the St. Charles Family Court, performed evaluations of Mother and Father at the request of the court-appointed guardian ad litem (GAL) in March 2005. The GAL asked Bunning specifically to evaluate their personality and emotional functioning.

Mother's test results revealed that she answered questions in a very defensive manner so as to portray herself positively, which Bunning finds very common in cases involving child custody. On the Parent–Child Relationship Inventory, Mother indicated that she saw herself as having plenty of support as a parent, felt she communicated well with her children and was good at setting limits, and enjoyed being a parent. Bunning concluded that Mother had psychosocial stressors, including the ongoing custody battle, financial difficulties, history of domestic violence, and ongoing acculturation issues. Mother's global assessment functioning score was seventy-five out of a possible one hundred.

Father's test results showed that he met criteria for narcissistic personality disorder, which involves a longstanding pattern of interactions with others that include a grandiose sense of self-importance, a sense of entitlement, an absence of empathy, and an arrogant attitude. When Bunning evaluated Father, he tended to see himself as a victim and to take no responsibility for his role in any of the relationships which he perceived as having victimized him, including relationships with his father, various employers, and each of his four ex-wives. Father's MMPI–2 test results showed immaturity, self-centeredness, and narcissism and were consistent with those of individuals who experience dramatic or bizarre somatic concerns, often meeting diagnostic criteria for conversion disorder. On a Personal Problems Checklist, which

has over two hundred different problems, Father checked off concerns in almost every realm, which led Bunning to conclude that he was very distressed and was struggling with a number of areas in his life. Data from Bunning's testing and her clinical interview of Father indicated a long-term pattern of aberrant interpersonal functioning, a grandiose sense of self-importance, a strong sense of entitlement, and a markedly arrogant attitude. In the report Bunning prepared for the court, she stated that Father's bitterness and hostility toward Mother pervaded Bunning's entire evaluation of him. Bunning stated that Father's intense anger toward women was a strong concern both for his ongoing interactions with Mother and for his ability to raise an emotionally healthy child, and she recommended that he seek individual psychotherapy and participate in an anger management program. Bunning also diagnosed Father with depressive disorder, not otherwise specified. Father's global assessment of functioning was sixty-five, which is within the normal range for someone under a great deal of stress.

Bunning attributed the difference between Father's and Mother global assessment of functioning scores to Father being rather angry and raw with his anger while Mother was more even-keeled and emotionally stable when Bunning performed the evaluations. Father and Mother both exhibited satisfaction with their roles as parents. However, both parties indicated they were unable to communicate with each other effectively. In concluding her report, Bunning specifically stated that Father should not be denied access to Son and opined that Son would benefit most from spending maximum time with each of his parents.

Both parties submitted Statements of Property and Statements of Income and Expenses. According to Mother's State-

ment of Income and Expenses, her average monthly income totals $1,675. She pays $610 monthly as rent and her utility expenses total $205 monthly. According to Father's Statement of Income and Expenses, his gross wages are $4,430 monthly. Mother also submitted a Form 14, which was admitted during the hearing.

The GAL recommended that the joint physical custody award not be changed but that the visitation schedule be altered so that Father would pick up Son from his educational facility on Friday and return him there on Monday. She opined that the original custody schedule that provided for Father to pick up Son on Friday and to return him to Mother at 6:00 p.m. on Monday was no longer workable because Son was older and attending preschool. As to legal custody, the GAL recommended that the parties' joint legal custody of Son be modified to allow Mother to make decisions respecting Son's education.

Following the hearing, the trial court denied Father's Motion for Family Access Order and entered a Judgment of Modification of Dissolution of Marriage and Denying Motion for Contempt (Modification Judgment) on October 18, 2006. As relevant to the issues on appeal, the trial court found Father's income to be $4,430 monthly and Mother's to be $1,670 monthly. It further found that Mother pays $345 monthly for Son's childcare and that Father has a medical benefit plan available to him through his employment with no out-of-pocket cost to Father for Son's coverage. The trial court's Modification Judgment modified the original award of joint legal custody to provide that Mother be the sole decision-maker with respect to issues involving Son's education and religious upbringing, with all other matters remaining subject to joint legal custody; adjusted the parties' physical custody schedule to provide that Father would ex-

ercise custody every weekend commencing between 5:00 p.m. and 6:00 p.m. on Friday through and ending between 6:30 a.m. and 7:30 a.m. on Monday with the exception of the fourth weekend of the month; increased Father's child support obligation for Son to $814 monthly; and reallocated Son's uncovered health care expenses so that Father would be responsible for 70%.

Mother filed a Motion *Nunc Pro Tunc,* and Father filed a Motion to Reopen, Correct, Amend or Modify the Judgment of Modification, or in the Alternative, Motion to Set Aside and for New Trial. The trial court granted Mother's Motion *Nunc Pro Tunc,* correcting the judgment to reflect that Father would get Son from his educational facility at the close of the educational day on Friday and return Son there between 6:30 a.m. and 7:30 a.m. on Monday. The trial court denied Father's Motions to Reopen, Amend and Modify the Judgment and his Motion to Set Aside and for New Trial. However, the trial court granted Father's Motion to Correct, finding that the court-prepared Form 14 was not in full conformity with the rules, correcting the Form 14 calculation, and decreasing the child support award from $814 to $677 monthly. This appeal follows.

*Points on Appeal*

Father raises four points on appeal. He claims the trial court erred in: 1) modifying the parties' custody plan when it found that they should continue to share joint physical custody and the evidence failed to demonstrate a change in Son's or the parties' circumstances and that modification served Son's best interest; 2) awarding Mother an increase in child support because Mother failed to plead for increased child support, failed to show changed circumstances so substantial and continuing as to make the original child support award unreasonable, and failed to present

evidence that Son's needs had increased so as to warrant the adjustment; 3) determining presumed child support because it provided only a 9% adjustment although Father was awarded more than 92 overnight visitation periods annually; and 4) ordering Father to pay 70% of the uncovered health care expenses despite the absence of a motion requesting that such expenses be allocated and the absence of evidence of changed circumstances so substantial and continuing as to make the original allocation unreasonable.

### Standard of Review

We will affirm the trial court's determination if its judgment is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Russell v. Russell,* 210 S.W.3d 191, 196 (Mo. banc 2007). A trial court's custody determination is afforded greater deference than other decisions. *Id.* We will not disturb the trial court's determination of custody unless it is manifestly erroneous and the child's welfare demands a different result. *Hamer v. Nicholas,* 186 S.W.3d 884, 886 (Mo.App. W.D.2006).

### Discussion

 Father's first point attacks the trial court's adjustment of the parties' physical custody schedule, that is, the scheduling of time between Mother and Father. Section 452.400.2 [2] provides the standard for modification of a visitation award. To modify a prior order of visitation rights, the trial court must merely find that the modification would serve the best interests of the child. *Russell,* 210 S.W.3d at 196.

Father argues that the evidence did not demonstrate changed circumstances justi-

fying modification. We disagree. At the time of the divorce, Son was an infant, Mother earned no income, and Mother and Son lived in a shelter. Now, Mother works full-time, and, as noted by the GAL, Son is older and attends preschool. Furthermore, the evidence shows that following their divorce, the parties have had extreme difficulty effecting the custody exchanges as scheduled in the parenting plan and that face-to-face exchanges are fraught with conflict. The revised schedule should better accommodate Son's school attendance and avoid interaction between the parties during pickup and return. Given Son's preschool schedule and Mother's full-time work status, we find that providing Mother with one weekend of physical custody with Son monthly likewise serves Son's best interest. The trial court did not err in modifying the parties' custody plan because substantial evidence demonstrates that modification served Son's best interests. Father's first point is denied.

Father's second and third points both address the trial court's corrected Form 14 calculations; thus, we will address them in conjunction. Father's second point claims the trial court erred in awarding Mother increased child support for Son on three bases, that Mother failed to: 1) plead for increased child support; 2) establish a 20% change so as to make a prima facie showing as required by Section 452.370; and 3) present any evidence that Son's needs had increased, absent a showing of the 20% change.

 An award of child support is within the trial court's sound discretion. *Russell,* 210 S.W.3d at 198. We will not substitute our judgment for that of the trial court. *Id.*

---

**2.** All statutory citations are to RSMo 2000, unless otherwise indicated.

■ Father claims Mother failed to request an increase in child support because her Motion to Modify only stated that her "*economic circumstances are insufficient to provide for the needs of said child, therefore said child requires support from Petitioner.*" Father argues Mother's Motion to Modify thus requested no more than "continued child support" from him. Father also argues that he abandoned his request to modify support, and thus, the issue of modifying support was not before the trial court.

In support of his position, Father cites to *Burch v. Burch*, 805 S.W.2d 341 (Mo. App. E.D.1991). In *Burch*, we held the issue of increased support was not before the trial court because the father, who had filed the motion to modify, had abandoned his request for child support, and the child's mother only requested in her pleadings that his father be ordered to resume paying support pursuant to the parties' original decree. *Id.* at 342–43.

The facts of *Burch* are clearly distinguishable from those of the case before us. First, although Father purported to abandon his Counter–Motion to Modify at trial by stating that he did not believe the motion alleged a fact consistent with the statute to grant relief, the trial court expressly rejected this argument, finding that Father's allegations that Mother had failed to allow him to exercise custody time and had threatened to remove Son from the United States were sufficient. Accordingly, evidence regarding these allegations and regarding support was adduced by both parties during the hearing.

Second, unlike *Burch*, both parties here filed motions to modify. Significantly, the prayer of Mother's Motion to Modify asked the court to order Father "to pay a sum of money as and for the support of said minor child," not "to resume paying child support," and, indeed, the record contains no indication that Father had ever discontinued paying his support obligation.

We conclude that Mother's allegation was sufficient to present the issue of increasing support. Father's argument that Mother's child support request was merely asking that the status quo be maintained disregards the fact that the financial circumstances she deemed insufficient included the child support she then received on Son's behalf. Interpreting her request as Father urges would be nonsensical.

Having determined that the issue of increased support was before the trial court, we now turn to Father's argument that Mother failed to demonstrate application of the child support guidelines and criteria set forth in Section 452.340 and applicable Supreme Court rules to the financial circumstances of the parties would result in a change of child support from the existing amount by 20% or more, or, alternatively, to present any evidence that Son's needs had increased. Although we find the evidence did show changed circumstances so substantial and continuing as to make the original award unreasonable, Father's argument that Mother failed to demonstrate a 20% change requires us to examine the trial court's corrected Form 14.

■ In the corrected Form 14, the trial court gave Father an adjustment of $779 to his gross income for other children in his primary physical custody. In contrast, the Form 14 calculated at the time of Mother's and Father's dissolution provided Father an adjustment of only $312 when his gross income was reported as $4207. The prior reduced adjustment would indicate that in 2002, Father was receiving child support for his daughter from a previous marriage. However, although the evidence showed that there was ongoing litigation concerning visitation and custody of this daughter from another marriage,

the record contains no evidence as to child support, if any, received by Father for this daughter. Even if Father is no longer receiving child support for this daughter and is entitled to the full adjustment, our examination reveals another discrepancy in the Form 14 calculation. Despite ample testimony showing that Mother also has a child in her primary physical custody, the trial court gave no corresponding adjustment to her gross income. Thus, the corrected Form 14 was not calculated in conformity with the Form 14 instructions.

◼ Additionally, Father's third point, claiming the trial court erred in determining his presumed child support because it provided only a 9% adjustment in spite of the fact that Father was awarded more than 92 overnight visitation periods annually, has merit. The modified visitation schedule, giving Father physical custody of Son from Friday evening until Monday morning every weekend except the fourth of each month, as well as half of the summer vacation periods as originally provided in the Judgment of Dissolution, clearly awards Father more than 92 overnight visitation periods annually. The Form 14 guidelines require adjustment for a portion of amounts expended by parents obligated to pay support during periods of overnight visitation or custody. If a parent obligated to pay support has been awarded periods of overnight visitation between 92 and 109 days per year, he or she is entitled to a 10% adjustment. *Russell*, 210 S.W.3d at 198. Accordingly, the trial court abused its discretion in not granting Father a 10% adjustment in child support.

◼ Given these apparent discrepancies, we conclude the trial court's corrected Form 14 was not calculated in full conformity with the Form 14 instructions.[3] We remand this issue to the trial court to determine the correct adjustments to Father's and Mother's income for other children in their primary custody and to grant Father the 10% adjustment to which he is entitled.

◼ We now turn to Father's fourth point. Father claims that the trial court erred in ordering Father to pay 70% of the uncovered health care expenses despite the absence of a motion requesting that such expenses be allocated and the absence of evidence of changed circumstances so substantial and continuing as to make the original allocation unreasonable. Our discussion regarding Father's argument that Mother failed to plead for increased child support is likewise applicable here. "A provision calling for the payment of uninsured medical expenses constitutes an order for the payment of child support." *Brooks v. Brooks*, 21 S.W.3d 834, 838 (Mo. App. E.D.1999). Responsibility for a

---

**3.** As noted by Father, a 20% change establishes a prima facie showing of the required change. However, evidence of changed circumstances so substantial and continuing may support modification of child support. *Eaton v. Bell*, 127 S.W.3d 690, 697 (Mo.App. W.D.2004). A substantial and continuing change may be shown as a result of increased living expenses, including those that occur with the maturing of the child. *Keller v. Keller*, 224 S.W.3d 73, 78 (Mo.App. S.D.2007). Although we must reverse and remand the award of child support to the trial court due to the nonconformity of the corrected Form 14, we note that the evidence did show changed circumstances so substantial and continuing as to make the original award unreasonable. Among other things, Mother testified that, since the Judgment of Dissolution, she and Son had moved from the shelter and that Son, who was older, was attending preschool. The evidence showed that Mother thus incurred increased expenses to meet Son's needs, including rent, utilities, and tuition, since the prior child support award was calculated. "[E]ducational expenses can be considered in determining a child support award." *Brooks v. Brooks*, 21 S.W.3d 834, 838 (Mo.App. E.D.1999).

child's uncovered medical care expenses may be equitably apportioned between parents by the court in percentage shares based on their income. Section 454.633.3.

■ We conclude that Mother's allegation that her economic circumstances were insufficient to provide for Son's needs and that Son required support from Father was likewise adequate to raise this issue of Son's uncovered health care expenses. Nevertheless, given our determination that the trial court erred in its corrected Form 14 calculation, we must remand this issue to the trial court with instructions to equitably apportion Son's uncovered medical care expenses in percentage shares based on the parties' incomes after performing the calculations in full conformity.

### Conclusion

The judgment of the trial court is affirmed in part, and remanded in part.

MARY K. HOFF, P.J., and GEORGE W. DRAPER III, J., concur.