**Nichole D. MORALES, Appellant,**

v.

**Michael James LINCOLN, Respondent.**

**No. WD 74146.**

Missouri Court of Appeals,
Western District.

June 5, 2012.

---

Audara Lutjen, Clinton, MO, for Appellant.

Carmen Carter, Raymore, MO, for Respondent.

Before JOSEPH M. ELLIS, P.J., JAMES EDWARD WELSH, and ALOK AHUJA, JJ.

JAMES EDWARD WELSH, Judge.

Nichole D. Morales appeals from a judgment entered in the Circuit Court of Cass County whereby the court adopted its own parenting plan on Morales's motion to modify a judgment declaring paternity.

Morales contends that the court's judgment is against the weight of the evidence because the evidence proved that it is in the child's best interest for Morales's address to be utilized for educational and mailing purposes and that Morales is the better parent to provide for the care and well-being of the child. We affirm.

On June 11, 2008, the circuit court dissolved the marriage of Morales and Matthew Morrow. Michael James Lincoln was named Third–Party Respondent in that dissolution proceeding. Lincoln's paternity of Harley Victoria Lincoln, born December 6, 2005, was established and an order declaring paternity was entered. The court awarded joint legal and joint physical custody of Harley to Morales and Lincoln, with Lincoln's home designated as the child's address for mailing and educational purposes. Each parent was awarded parenting time pursuant to a stipulated parenting plan approved by the court and found to be in the best interest of Harley. Physical custody was arranged such that one parent had Harley Monday, Tuesday, Friday, Saturday and Sunday during a given week, with the other parent having physical custody Wednesday and Thursday of that same week. Thereafter, the physical custody schedule switched and, therefore, the parties enjoyed equal time with Harley. No child support was awarded.

On October 13, 2010, Morales filed a motion to modify the paternity judgment. She alleged a substantial and continuing change in circumstances such that the terms of the court's previous order, regarding child support and parenting times, were unreasonable. Morales asked the court to designate her home as the child's address for mailing and educational purposes and, therefore, change Harley's school district from Lincoln's to Morales's. Morales also requested that the court award Morales child support and alter the physical custody schedule such that Morales would primarily have physical custody of Harley and Lincoln would have custody on alternating weekends and two consecutive weeks during the summer.

Lincoln denied substantial and continuing changed circumstances but submitted a parenting plan with his suggested physical custody schedule in the event the court found changed circumstances. Lincoln's plan proposed that his home continue to be the designated address for educational and mailing purposes. Additionally, Lincoln proposed that Morales receive alternating weekends for her custodial periods and six weeks during the summer.

On May 4 and 5, 2011, the court heard evidence, and, on June 1, 2011, the court entered a modification judgment entry. The court found that the evidence did not demonstrate a change in circumstances requiring a change of legal or physical custody. Therefore, the court ordered that the parties continue to share joint physical and joint legal custody of Harley. The court found, however, that due to Harley's upcoming entrance into kindergarten, Harley's best interest required a change in the physical custody schedule. The court considered the parenting plans proposed by both parties but ultimately adopted its own. The court ordered that Lincoln's home be designated as Harley's address for mailing and educational purposes. The court ordered that Harley spend the majority of time with Lincoln, allowing Morales physical custody on alternating weekends and holidays and seven weeks during the summer. The court additionally ordered Morales to pay Lincoln $130 per month in child support. Morales appeals.

 In a custody modification proceeding, we will affirm the circuit court's ruling "unless there is no substantial evidence to support it, unless it is against the

weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence and all permissible inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Bridgeman v. Bridgeman*, 63 S.W.3d 686, 689 (Mo.App. 2002). We recognize the circuit court's superior position to judge the witnesses' credibility, sincerity, character, and other intangibles that are not apparent from the transcript. *Krost v. Krost*, 133 S.W.3d 117, 119 (Mo.App.2004). Pursuant to section 452.410, RSMo Cum.Supp.2011, the court may not modify custody unless it finds a change in circumstances of the child or his custodian and that modification is necessary to serve the best interests of the child. *See Russell v. Russell*, 210 S.W.3d 191, 196–197 (Mo. banc 2007). We do not "require a 'substantial' change from the circumstances of the original judgment where the modification sought is simply a rearrangement in a joint physical custody schedule." *Id.* at 197.

■ In her sole point on appeal, Morales contends that the court erred in entering its judgment and adopting its parenting plan because the evidence proves that Morales is in the best position to provide for Harley's care and well-being and that, Morales had already been the parent to do so. Morales additionally claims that it is in Harley's best interests for Morales's address to be designated for educational and mailing purposes. We find no error.

Morales, in her motion to modify, set forth several claims to support her allegation that changed circumstances warranted a modification placing the child primarily in her care, changing the child's school district, and requiring Lincoln to pay Morales child support. After review of the record, we find no evidence that Morales proved any of the allegations in her motion to modify.

Morales claimed in her motion that Lincoln had a change in income that would result in an increase of greater than 20% in child support since the order of paternity. Morales's evidence, however, showed that Lincoln's income suffered a decrease each year following the original judgment.

Morales claimed in her motion that she and Lincoln *now* live in separate school districts and that Harley would soon be attending public schools and that it was in Harley's best interest for Morales to receive custody for educational and mailing purposes. At trial, Morales testified that she and Lincoln reside in the same school districts in which they resided at the time of the original judgment. At the time of the original judgment, Morales agreed that Harley would attend school in Lincoln's East Lynn school district and that Lincoln's home would be designated as the child's address for mailing and educational purposes.

Morales claimed in her motion that Lincoln had refused to give Morales the opportunity to care for Harley when Lincoln was unavailable to do so himself.[1] In Morales's attempt to prove these allegations, Morales admitted that she, on a regular basis, failed to give Lincoln the right of first refusal when Morales was unavailable to care for Harley.

Morales alleged in her motion that Lincoln had withheld information from Morales that resulted in a breakdown of parental communication. Morales alleged that Lincoln twice failed to inform her that he had taken Harley to the doctor and that Morales only became aware of the doctor's visits after they occurred. Morales testi-

---

1. Referenced by the parties as the "right of first refusal."

fied to only two incidents over a span of three years, and Morales offered no evidence that these two remote instances resulted in a breakdown of parental communication.

Morales claimed in her motion that Lincoln regularly changed employment and had an unstable schedule that prevented Lincoln from providing Harley with necessary care. She charged that Lincoln's wife participated in the majority of Harley's care. At trial, Morales testified that Lincoln's schedule was unstable "because his hours vary," but admitted to having no knowledge of his actual schedule. With regard to her own stability, Morales testified that she had been unemployed for two years. After being terminated from employment in 2009, Morales began taking classes and testified to being a full-time student at the time of trial. She testified that she could not support Harley solely on her unemployment income and without the financial assistance of her present husband. Morales testified that, although she was gone every night of the week for four months in 2010, her own situation was "stable, because I'm bettering myself for [Harley]." Morales testified that the fact that she left Harley with her husband during Morales's evenings away also provided stability for the child. The admissions by Morales, that Morales's husband takes a significant role in the caretaking of Harley during Morales's custodial periods with Harley, undermined Morales's attempt to find fault with Lincoln by alleging that Lincoln's wife takes a significant role in the caretaking of Harley during Lincoln's custodial periods with Harley.

Morales claimed in her motion that child support was not awarded in the original judgment because Lincoln was to pay for 100% of daycare expenses but that Morales and Lincoln now split schooling expenses. Morales offered no evidence that the parties now split daycare or schooling expenses. Morales's testimony was that Lincoln primarily paid for the daycare expenses and that, at most, Morales paid $100 during the course of one school year and two month's expenses out of twelve months of another school year.

As Morales failed to prove any of the allegations set forth in her motion to modify, we find substantial evidence to support the circuit court's denial of Morales's request to place Harley primarily in her care, move Harley to Morales's school district, or require Lincoln to pay Morales child support. We find substantial evidence to support the circuit court's conclusion that Harley's upcoming entrance into kindergarten constituted a change in circumstances such that it was in the best interests of Harley that the physical custody schedule be altered to accommodate that change. The court applied the requisite and relevant factors for custody determinations, set forth in 452.375, RSMo Cum.Supp.2011, to the evidence in this case. While it is unnecessary to restate the court's thorough findings, we conclude that the evidence substantially supports the court's determination that Harley's best interests will be served by the parenting plan adopted by the court. The evidence substantially supports Lincoln's home as the most appropriate designation for educational and mailing purposes and that it is in Harley's best interest for Lincoln to enjoy the majority of physical custody of Harley and for Harley to remain in the school district familiar to her, with Morales receiving substantial and meaningful parenting time in the form of alternating weekends and holidays and seven weeks during the summer. Harley attended the pre-kindergarten program in Lincoln's school district, is familiar with teachers and staff in Lincoln's school district, has ridden the school bus in Lincoln's school district, and has school friends in

Lincoln's school district. We disagree with Morales's contention that the evidence proves her to be the better parent to provide for Harley's care and well-being. We find substantial evidence to support the court's conclusion that Lincoln most demonstrated the ability to put Harley first and actively perform the functions of parent. Morales's baseless and sometimes duplicitous claims against Lincoln in her motion to modify and Morales's admissions at trial of her failure or refusal to follow through with prior agreements and arrangements regarding Harley[2] provided ample evidence for the court's judgment. Point denied.

We, therefore, conclude that the circuit court did not err in entering its judgment and adopting its parenting plan because substantial evidence supported the court's judgment. The evidence supported the court's conclusion that Harley's upcoming entrance into kindergarten warranted a continuing designation of Lincoln's address for educational and mailing purposes due to the child's familiarity with and past participation in Lincoln's school district. Substantial evidence supported the court's determination that Harley's pending entrance into kindergarten warranted a change in the physical custody schedule, and substantial evidence supported the parenting plan adopted by the court. We affirm the circuit court's judgment.

All concur.

---

**2.** Morales agreed in the original paternity judgment that Harley would attend school in Lincoln's school district. Morales additionally agreed that Harley would be enrolled in a preschool agreed upon by Morales and Lincoln and then failed to take Harley to preschool on the days Morales had physical custody.