

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| J.T.P., | ) | No. ED99788 |
| | ) | |
| Petitioner/Appellant, | ) | |
| | ) | Appeal from the Circuit Court |
| v. | ) | of St. Charles County |
| | ) | |
| P.F., | ) | Hon. William T. Lohmar, Jr. |
| | ) | |
| Respondent/Cross-Appellant. | ) | FILED:   May 27, 2014 |

J.T.P. (Father) and P.F. (Mother) appeal the trial court's judgment modifying the residential custody schedule for their son, K.R.P. (Son).  We reverse.

## Background

In 2002 at the age of 21, Mother suffered a stroke that caused long-term cognitive impairment.  Mother's son from a previous relationship was four years old at the time.  Mother and Father met in 2003 and lived together until shortly after Son's birth in May 2005.  Mother then moved into her own apartment with her two young sons.  In March 2006, the trial court entered a decree of paternity and judgment awarding the parties joint legal and physical custody of Son.  Mother's address was designated as Son's primary address for educational and mailing purposes.  Mother had residential custody every Monday and Tuesday, Father had residential custody every Wednesday and Thursday, and they alternated weekends.

Sometime after entry of the judgment, Mother and her sons relocated to reside with her mother, step-father, and adult sister.  As a result, Mother and Father now live in different school

districts but within reasonable driving distance and in the same county. In April 2010, Father filed a motion seeking sole legal and physical custody on the basis that Mother was neglectful and uncooperative. As a result of those allegations and on Father's motion, the court appointed George Tillman to serve as guardian *ad litem* (GAL). Mother filed an answer and cross-motion also seeking sole legal and physical custody.

The cause was originally set for trial August 11, 2011, but actually commenced July 30, 2012 and, after three days of testimony spread over five months, ended November 30, 2012. The parties amassed collectively over $96,000 in attorney fees and $9,780 in GAL fees. At trial, the court ascertained that Father merely sought modification of the residential custody schedule in his favor (rather than sole custody) primarily on the basis that Mother's cognitive impairment rendered her unable to assist Son academically. The trial court would ultimately grant Father's request on that basis, awarding Father residential custody during the school year and Mother during the summer, with alternating weekends and holidays. As relevant to this appeal, the following evidence was adduced.

Father has a high school diploma and some college credits. He works night shifts at UPS. Father resides with his girlfriend and has another son whose visitation schedule coincides with Son's days there. Father's girlfriend and mother transport Son to school when Father is working or sleeping, and Father's mother cares for Son in the summer.

Mother and her two sons reside with her family, who assist her in parenting the boys. Mother is capable of routine parenting tasks (*e.g.*, waking the children for school, preparing meals, readying the children for bed) but limited in her ability to assist with school work. As a result, her family members provide the necessary academic support. Son's grandmother is an adjunct professor and, at the time of trial, was near completion of a doctoral degree. She

2

described Mother's daily activities as typical of a stay-at-home mom. Son's step-grandfather completed some college hours (40-50) and had worked as a team leader at General Motors for nearly 30 years. He described homework as a team effort, stating that the "family works together."

Dr. Susan Sanderson was appointed by the court to evaluate Mother's cognitive functioning, particularly regarding her ability to be a safe and effective parent. Sanderson testified that Mother has reading, language, and memory deficiencies and an IQ of 76, placing her in the "borderline" range of intellectual functioning. Sanderson testified that Mother is able to recognize her need for help and ask for appropriate assistance. Sanderson had "no specific parenting concerns" beyond Mother's academic limitations. Sanderson conceded that she knew nothing of Mother's family members' academic abilities or those of Father.

Mother's own expert, Dr. Dean Lawrence Rosen, also evaluated Mother and reached similar conclusions with respect to Mother's cognitive limitations. Additionally, however, Rosen observed Mother's interactions with Son in a clinical setting and found her parenting skills "warm" and "appropriate." Rosen explained that a child's primary needs from his parents are unconditional acceptance and encouragement toward achievement, and that Mother provides both. He opined that a parent's *academic* ability to assist a child is only one aspect of educational parenting and, in any case, Mother surrounded herself with family members who could compensate for her cognitive limitations. Rosen also noted that Son had advanced language skills for his age (then 5). But, at least as important, Rosen explained, is a parent's ability to set expectations, enforce study habits, and reward good work. Rosen opined that Mother "can provide absolute warmth and acceptance to her child, making him feel safe and loved and accepted" and that she is "capable of setting limits and boundaries." Finally, when

asked about a change in the custody schedule, Rosen replied that children have difficulty with change and always do best with predictability.

GAL Tillman testified that Son is bonded with both parents and is well-adjusted to the current schedule. He found the evidence insufficient to justify a major modification in residential custody and recommended that it was in Son's best interests to maintain the existing schedule. At most, he suggested that Father have additional visitation with Son after school on Mother's custodial days during the school year in order to help Son with his homework.

Based on the foregoing and noting that Mother's cognitive impairment existed prior to the original custody decree, the trial court found no substantial and continuing change in circumstances to justify modification of custody under §452.410. However, the court found that Father was in a superior position to provide academic support for Son and, therefore, it was in Son's best interest for Father to do so on a consistent basis. Thus, relying on §452.400.2 governing visitation, the court modified the residential custody schedule for Son to live with Father during the school year and with Mother over the summer. Mother was awarded weekend visitation during the school year, all spring and Christmas vacations and certain federal holidays, and other federal holidays in alternating years. Father was awarded weekend visitation and one full week during the summer and the alternating federal holidays. Finally, the court ordered each party to pay their respective attorney fees and ordered Father to pay all GAL fees.

Father appeals, asserting that the trial court abused its discretion by granting Mother all Christmas and spring vacations and certain federal holidays and by ordering Father to pay all GAL fees. Mother cross-appeals asserting that the trial court erred in substantially modifying the parties' residential custody schedule without a change in circumstances and without evidence that it was in Son's best interest.

**Standard of Review**

On appeal, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Jansen v. Westrich, 95 S.W.3d 214, 217-18 (Mo. App. 2003), citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976).

**Discussion**

We address Mother's cross-appeal first, as it resolves the central issue and renders Father's first point moot. For her first point, Mother contends that the trial court erred by invoking the visitation statute to modify the custody schedule.

Section 452.410.1 governs custody modifications. It states that the court shall not modify a prior custody decree unless a change in circumstances has occurred and modification is necessary to serve the best interests of the child. Section 452.400.2(1) governs visitation modifications. It states that the court may modify an order granting visitation rights whenever modification would serve the best interests of the child.

The Missouri Supreme Court clarified the distinction between the two in Russell v. Russell, 210 S.W.3d 191 (Mo. 2007). There, as here, the parties originally were awarded joint physical and legal custody. Later, the mother sought a modification of the residential schedule due to changes in both parents' work schedules. The trial court granted her motion, relying on the visitation statute to adjust the parties' respective residential custody periods. On appeal, the Court observed that the modification statute "directs courts to consider a modification of any kind of custody award under §452.410." Id. at 196. Noting that the parties' original decree "labeled the custody provisions as joint legal and physical custody," the Court held that application of the visitation statute was error. However, applying the modification statute, the

5

Court found sufficient evidence of changed circumstances since the original decree to warrant modification of the custody arrangements. Id. at 197.

Russell is instructive by its contrast and supports Mother's point. Here, as in Russell, the parties' original decree awarded joint physical and legal custody and, according to Russell, the trial court's application of the visitation statute to adjust residential time is error. However, here, there was no change in circumstance since the original decree and thus no basis for the modification under the proper statute, §452.410.

We are further informed by Clayton v. Sarratt, 387 S.W.3d 439 (Mo. App. W.D. 2013). As in Russell, the parents shared joint physical and legal custody and sought a modification of the residential schedule due to subsequent changes in their employment and residences. The trial court properly applied §452.410 and granted modification, and the Western District affirmed. Again here, Clayton is instructive by its contrast and further supports Mother's point. Citing Russell, the court explained, "the standard for modification found in section 452.410.1 applies when a party seeks to modify the custodial arrangement [referring to sole versus joint custody], as well as when a party seeks to modify a term related to the custodial arrangement, such as the parenting time schedule." Id. at 445. It continued:

> In Russell v. Russell, 210 S.W.3d 191, 194 (Mo. banc 2007), the court held that a modification to parenting time is still a modification to the prior judgment, even though it does not change the custodial arrangement itself, and therefore, the party seeking modification must show a change in circumstances pursuant to the standard found in section 452.410.1. Where one party has sole physical custody and the other has visitation, however, a change to visitation requires a showing only that the "proposed change be in the best interests of the child," and a change in circumstances is not required. Id. at 193; *see also* §452.400.2. In the present case, the parties have joint custody and seek a modification of the parenting time schedule and residential designation; they do not seek to modify the custodial arrangement itself. Thus, the standard found in section 452.410.1 is appropriate.

Clayton v. Sarratt, 387 S.W.3d 439, 446 FN 16 (Mo. App. W.D. 2013).

6

Guided by the clear edicts of Russell and Clayton, we must conclude that the trial court erred by applying the visitation statute (§452.400). Rather, the significant change in the parties' residential custody schedule is subject to the standards of §452.410.1, and those standards are not satisfied here. According to the trial court's own findings, there had been no change in circumstances since the original custody decree. "If the trial court does not find a substantial change of circumstances, it never reaches the best interests issue." Hall v. Hall, 345 S.W.3d 291, 296 (Mo. App. S.D. 2011).

Even had the trial court found a change in circumstances and thus properly reached the best interests issue, its finding that such a drastic change in the residential schedule was in Son's best interest is not supported by the evidence and is against the weight of the evidence (Mother's third point). We are mindful that our standard of review requires great deference to the trial court in determining a child's best interests. Noland-Vance v. Vance, 321 S.W.3d 398, 403 (Mo. App. S.D. 2010) (greater deference given in custody determinations than in other cases). Our role is to determine whether the record contains sufficient evidence to support the trial court's assessment, accepting all evidence and inferences favorable to the judgment. H.J.I. by J.M.I. v. M.E.C., 961 S.W.2d 108, 115 (Mo. App. W.D. 1998). We will not reverse the trial court's judgment unless we are left with the firm belief that the trial court was wrong. Id. at 116. Alas, we hold that belief here.

The trial court's sole justification for the upheaval in Son's routine was, as the court phrased it, "to *allow Father the opportunity* to provide that [academic] support on a consistent basis throughout the child's academic year." (emphasis added) We are troubled that the trial court framed the issue in terms of Father's opportunity rather than Son's need. Moreover, neither of the experts, nor the GAL, opined that Son's academic support at Mother's house was

deficient, or that Father's support was superior, or that such a consideration supersedes other aspects of parenting. Academic prowess is not universal among good parents. As Dr. Rosen explained, a parent's ability to teach a child academic subject matter is less important than the parent's *engagement* in the child's education (*e.g.*, ensuring attendance, setting expectations, enforcing study time). Additionally, Rosen cautioned against unnecessary changes in a child's routine and, importantly, the GAL clearly opposed any change in the existing residential schedule. GAL Tillman testified as follows:

> So from what I can see … I don't see that a change at this point would be in the child's best interests. I think it'd be in the child's best interest to remain at the schedule he has. … If the court is going to consider giving father additional time and moving school districts for the child, I think that's a pretty substantial change, and we don't have any … evidence that I've seen to show that (a) the child needs that extra educational attention or that (b) such a change would help him flourish in any way. The child seems to be doing quite fine in school at this point.

While generally the trial court is free to assign weight to the evidence and credibility to the witnesses as it deems proper, here the court's best interest finding is not supported by any substantial evidence and is against the weight of the evidence. Mother's points I and III are granted. We need not reach her remaining points.

GAL Fees

Father asserts that the trial court abused its discretion by ordering him to pay the entirety of GAL fees. In support of his position, Father argues that the parties' respective incomes are similar, so the GAL fees should be shared equally. This argument is simply inadequate to overcome our standard of review. "A reviewing court should not disturb the trial court's award of guardian *ad litem* fees absent an abuse of discretion." S.I.E. v. J.M., 199 S.W.3d 808, 822 (Mo. App. S.D. 2006). "An abuse of discretion is committed if the trial court's decision defies logic under the circumstances, is sufficiently arbitrary and unreasonable to shock the conscience of the court, and exhibits a dearth of careful consideration." Id.

Here, the trial court appointed the GAL upon Father's motion alleging that Mother was neglectful and uncooperative and was attempting to alienate Father from Son. While we do not question Father's good faith, ultimately those allegations would prove unsubstantiated at trial. Neither expert expressed any concern about Mother's fitness as a parent. GAL Tillman testified that son was very happy and well bonded to both parents. "When ordering the payment of guardian *ad litem* fees, the court may consider the circumstances which necessitated the appointment." Noland-Vance, 321 S.W.3d at 426 (assessing GAL fees to parent who made unsubstantiated allegations of abuse and neglect). The trial court's assessment of GAL fees to Father was not arbitrary or unreasonable and does not shock the conscience of this court. Point denied.

### Result

The trial court's judgment is reversed.

_____
CLIFFORD H. AHRENS, Judge

Roy L. Richter, P.J., concurs.
Glenn A. Norton, J., concurs.

9