

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| **NDEYE MARIEME NDIAYE,** | ) |
| | ) |
| **Respondent,** | ) |
| | ) **WD78558** |
| **v.** | ) |
| | ) **OPINION FILED:** |
| | ) **May 10, 2016** |
| **CHEIKH IBRA SEYE,** | ) |
| | ) |
| **Appellant.** | ) |

**Appeal from the Circuit Court of Boone County, Missouri**
**The Honorable Robert Sterner, Judge**

**Before Division Four:** Alok Ahuja, Chief Judge, and
Mark D. Pfeiffer and Karen King Mitchell, Judges

Cheikh Ibra Seye (Father) appeals the trial court's judgment denying his motion to modify the parenting plan between himself and Ndeye Marieme Ndiaye (Mother), which was adopted by the court in 2012. The 2012 Judgment and Order granted the parents joint legal and physical custody of their two children, S.S. and M.S. In his motion to modify, Father sought sole legal custody and a modification of the joint physical custody of the children. He also requested that the trial court modify the child support award. The trial court found that there had not been a change in circumstances sufficient to warrant considering modification of either child support or custody. Father appeals. Finding no error, we affirm.

## Background[1]

The marriage of Father and Mother, which was dissolved in 2008, produced two children: S.S., born in 2003, and M.S., born in 2006. Sometime following the dissolution, Father moved to Indianapolis to take a new job. The parenting plan and child support award were modified in 2012 (the 2012 modification).

The 2012 modification accepted a parenting plan presented by Mother as being in the best interest of the children. The plan granted both parents joint legal and physical custody of the children. It stated that the children would reside with Mother during the school year and that they would attend the Islamic School of Columbia "until they are no longer able to attend due to age." Father was granted custody on every other weekend during the school year, most of the summer, and on certain holidays. The 2012 modification set out scheduled times for the children to call Father if the parents were not able to agree on a phone schedule. As a part of the findings required by § 452.375,[2] the 2012 modification also noted "that [Mother] and [Father] have had an acrimonious relationship" and that the "failure to communicate only worsened when [Father] relocated to the state of Indiana." Presumably due, at least in part, to this acrimonious relationship, the 2012 modification ordered the parents to communicate only through text or email. The 2012 modification adopted Mother's Form 14 as the correct presumed child support amount and ordered Father to pay child support to Mother in the amount of $1,369.00 per month.

During the 2013-14 school year, M.S., who was in second grade, began having academic difficulties and was failing three subjects. In October, the Islamic School informed Mother that it was "not serving [M.S.'s] academic needs" because, due to the limited students of M.S.'s age,

---

[1] "On appeal, this Court views all facts and inferences in a light most favorable to the judgment." *Perren v. Perren*, 475 S.W.3d 741, 743 (Mo. App. S.D. 2015) (quoting *Skovira v. Talley*, 369 S.W.3d 780, 781 (Mo. App. S.D. 2012)).

[2] All statutory citations are to the Revised Statutes of Missouri 2000, unless otherwise noted.

M.S. had been enrolled "in a combined 2/3rd grade class . . . [that] had been taught more on the third grade level." The school concluded that it "d[id] not have an appropriate class for [M.S.]." The next day, Mother removed both of the children from the Islamic School and enrolled them in Mill Creek Elementary School, a public school in the district where they reside. However, on the children's first day at Mill Creek, Father contacted the school's principal to express his objections to their enrollment. As a result, the children were removed from Mill Creek and Mother began homeschooling them.

Father filed a motion for contempt, and both parents consented to an order holding Mother in contempt, with the contempt to be purged by Mother re-enrolling the children in the Islamic School. When Mother went to enroll the children in December of 2013, the school agreed to accept S.S., but reiterated that it did not have an appropriate placement for M.S. Mother continued to homeschool M.S. until January, when, with Father's consent, M.S. was enrolled at Mill Creek.

In May of 2014, Father filed a motion to modify custody and child support. Father requested sole legal and joint physical custody of the children, with a modified parenting plan that made the children's primary residence his home in Indianapolis during the school year. Father filed a Form 14, showing that Mother should pay Father $709 per month, reflecting that, with the modification, Father would have physical custody of the children the majority of the year.

A three-day trial was held. Father offered evidence that Mother made no effort to discuss with him removing the children from the Islamic School; Mother's primary motivation for doing so was money; there was a similar private school near Father's home in Indianapolis that would provide grade-appropriate education for the children; and either Father or his new wife could

3

care for the children at all times they were not in school, while Mother relies on babysitters while she worked three 12-hour shifts per week as a nurse. Father also provided evidence that M.S. needed special care due to his diagnosis of ADHD with oppositional defiance, that M.S. and S.S. both respond well when they are with Father due to his consistent approach to discipline, and that it would be in the children's best interest to live with Father. Father also testified to a number of occasions when Mother allegedly made custody exchanges difficult by refusing to deliver or pick up the children on time, as well as Mother's failure to allow the children to call Father at the times specified in the 2012 modification.

Mother presented evidence that, despite her efforts to communicate with him, Father had refused to discuss removing the children from the Islamic School; that she removed the children from private school for a number of reasons, including Father's failure to pay tuition as required by the 2012 modification and the lack of a second grade classroom for M.S.; and that Mother has the same job that she had at the time of the 2012 modification and works substantially the same schedule. Mother also offered evidence that she works frequently with M.S. to address his behaviors, that he is attending counseling and generally responding positively, and that he is doing well in school.

The trial court issued its Judgment and Order, denying Father's motions because no "change has occurred in the circumstances of the children or their custodians such that modification [of custody] is necessary," and "there have [not] been any changes of circumstances so substantial and continuing as to make the child support terms unreasonable." Father timely appealed.[3]

---

[3] Additional facts will be set forth in the opinion as necessary.

**Standard of Review**

In this court-tried case, we affirm the circuit court's decision "if the judgment is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law." *Speer v. Colon*, 155 S.W.3d 60, 61 (Mo. banc 2005). We "accept as true evidence and inferences favorable to the trial court's judgment while disregarding contrary evidence" and inferences. *Higgins v. Ferrari*, 474 S.W.3d 630, 639 (Mo. App. W.D. 2015).

**Analysis**

Father raises three points on appeal: (1) the trial court erred in determining that no change had occurred sufficient to warrant consideration of a child custody modification; (2) the trial court erred in not making the "best interest" findings required by § 452.375.6; and (3) the trial court's decision not to modify child support was against the weight of the evidence in that Father's Form 14 resulted in a twenty percent change from the existing support amount. For ease of analysis, we will address Points I and II together.

I. **The trial court did not err in either determining that there was no change of circumstances sufficient to warrant considering modification or in not making best interest findings.**

In his first point, Father argues that the trial court erred in determining that there was no change in circumstances to warrant considering modification of custody. Custody modifications are governed by section 452.410.1, which provides that a court may modify custody if the court finds "upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child[ren] or [their] custodian and that the modification is necessary to serve the best interests of the child[ren]." § 452.410.1. The finding of a change in circumstances "is a threshold matter; *if*

5

the trial court finds that a change in circumstances has occurred, it *then* must determine whether a modification to the prior decree and parenting plan is warranted, considering the best interests of the children." *Prach v. Westberg*, 455 S.W.3d 513, 517 (Mo. App. W.D. 2015). Here, in denying Father's motion to modify, the trial court found that no change in circumstances warranting considering modification had occurred. Therefore, the court did not reach the issue of whether a modification would be in the best interests of the children.

The parties disagree over the standard to apply to determine whether there has been a change in circumstances sufficient to warrant considering modification, with Father arguing that the statute requires only a "change" of circumstances, while Mother argues that a "substantial change" is required. Both parents are partially correct. Father seeks two different types of modification: a change from joint to sole legal custody, and a continuation of joint physical custody, subject to a modification of the children's legal residence and resulting changes in the parenting plan. These two different types of modifications require the application of different standards for determining whether a change in circumstances has occurred.

The term "custody" is defined by section 452.375.1(1). "Custody," for purposes of chapter 452 includes "joint legal custody, sole legal custody, joint physical custody or sole physical custody or any combination thereof." § 452.375.1(1). "'Joint legal custody' means that the parents share the decision-making rights, responsibilities, and authority relating to health, education and welfare of the child." § 452.375.1(2). "'Joint physical custody' means an order awarding each of the parents significant, but not necessarily equal, periods of time during which the child resides with or is under the care and supervision of each of the parents." § 452.375.1(3). Specifics of the physical custody arrangement, such as a parenting time schedule

6

and designation of a home address for educational and mailing purposes, are generally addressed separately in the Judgment and Order or in a parenting plan adopted by the court.

"If a motion to modify seeks to change the 'custody' of the children, for example, from joint legal or physical custody to sole legal or physical custody or from sole custody in one parent to sole custody in the other parent, the 'change in circumstances' must be substantial." *Prach*, 455 S.W.3d at 516. This is because such a modification "is premised upon a change in the factual underpinning of the original judgment; [and] in such circumstances it is fitting for courts to respect the finality of such judgments and to be unwilling to alter such judgments fundamentally without a showing that the change in circumstances is indeed substantial." *Russell v. Russell*, 210 S.W.3d 191, 194 (Mo. banc 2007).

However, where a "motion to modify seeks only changes in terms 'related to the custodial arrangement,' such as changes in the parenting time schedule or to the minor child's address for mailing and educational purposes, the plain language of [§ 452.410.1] controls." *Prach*, 455 S.W.3d at 516 (quoting *Clayton v. Sarratt*, 387 S.W.3d 439, 446 (Mo. App. W.D. 2013)). "The word 'substantial' does not appear in [§] 452.410.1 and should not be read into the statute for changes of scheduling parenting time between mother and father." *Russell*, 210 S.W.3d at 194.[4] Thus, the change in circumstances need not be substantial; rather, all that is required is that "a change has occurred in the circumstances of the child or his custodian." § 452.410.1; *Clayton*, 387 S.W.3d at 446 n.16 (holding that, where "the parties have joint

---

[4] Mother attempts to distinguish *Russell v. Russell*, 210 S.W.3d 191, 197 (Mo. banc 2007), which characterized the modification at issue in that case as no more than "essentially a few hours a week," from the present situation, where the modification would result in the children moving several hours from what has been their home and school district. She argues that the change proposed by Father "would be a drastic change for the children" and should require a substantial change in circumstances. But courts have upheld modifications based on a mere change in circumstances even where the parents have resided in different countries. *Gaudreau v. Barnes*, 429 S.W.3d 429, 431-32 (Mo. App. E.D. 2014) (The "change in circumstances need not be 'substantial' for modification of joint physical custody," even when one parent resides in Canada and the other in St. Louis.).

custody and seek a modification of the parenting time schedule and residential designation [and not] the custodial arrangement itself," § 452.410.1's change of circumstances standard applies).

Not every change is sufficient to meet even this lesser standard of a simple change in circumstance. *See J.T.P. v. P.F.*, 440 S.W.3d 497, 498, 501 (Mo. App. E.D. 2014) (The evidence did not support a change in circumstance when "[s]ometime after entry of the judgment, Mother and her sons relocated to reside with her mother, step-father, and adult sister . . . in [a] different school district[] but within reasonable driving distance and in the same county" as Father).

Here, Father has requested that custody be changed from joint legal custody to sole legal custody with Father. This is a "drastic" modification that would require a substantial change in circumstances to justify. *Russell*, 210 S.W.3d at 197. Father has also requested that the physical custody remain joint, but that the children's address be changed to show Father as the residential parent, with the children residing with Father during the school year. This "is simply a rearrangement in a joint physical custody schedule," which does not require that the change in circumstances be substantial. *Id.*; § 452.410.1. Father has not argued, either in his point relied on or the argument section of his brief, that there was a *substantial* change in circumstances. Rather, he argues that the trial court erred in not finding that the lesser standard of change in circumstances had been met. Accordingly, we deem that any argument that the trial court erred in not finding a substantial change in circumstances sufficient to warrant modifying joint legal custody to sole legal custody has been abandoned.[5] *Caranchini v. Mo. Bd. of Law Examiners*, 447 S.W.3d 768, 772 (Mo. App. W.D. 2014). We therefore review only Father's claim that the trial court's determination that there was no change in circumstances sufficient to support

---

[5] Where the motion requests the modification of both legal and physical custody, and one requires only a change while the other requires a substantial change in circumstances, it is arguably appropriate to address the alleged errors in separate points. We nevertheless review Father's claim that there was a change in circumstances supporting his motion to modify the terms of the parents' joint physical custody.

modifying the terms of the parents' joint physical custody was against the weight of the evidence.

Father alleges that a number of situations and actions by Mother support the finding that the circumstances of the children or the parents had changed sufficiently since the 2012 modification to warrant considering modification of the residential designation and parenting plan, and thus, the circuit court's finding to the contrary was not supported by substantial evidence, was against the weight of the evidence, or misapplied the law.[6] In support of his claim of a change in circumstances, Father alleges that: (1) M.S. was diagnosed with ADHD after the 2012 modification; (2) Mother changed residences without notifying Father, which led to M.S. attending a different elementary school;[7] (3) changes in Mother's work schedule resulted in her reliance on babysitters when the children were in Mother's care; (4) Mother interfered with Father's visitation; and (5) in various ways, Mother engaged in unilateral decision-making in violation of the parenting plan.

### A. Where there is conflicting evidence, we defer to the trial court's factual determinations.

"As to custody, a court 'shall not modify a prior custody decree unless . . . it finds, upon the basis of *facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree*, that a change has occurred in the circumstances of the child or his

___

[6] Father's Point I is "multifarious in that it collapses disparate contentions of error into a single point relied on contrary to Rule 84.04(d)." *Atkins v. McPhetridge*, 213 S.W.3d 116, 120 (Mo. App. S.D. 2006). The point sets forth claims that the judgment is against the weight of the evidence, erroneously applies the law, and is unsupported by substantial evidence. "[A] substantial-evidence challenge, a misapplication-of-law challenge, and an against-the-weight-of-the-evidence challenge . . . are distinct claims[, and] must appear in separate points relied on in the appellant's brief to be preserved for appellate review." *Ivie v. Smith*, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014). "Improper points relied on, including those that are multifarious, preserve nothing for appellate review." *Martin v. Reed*, 147 S.W.3d 860, 863 (Mo. App. S.D. 2004) (quoting *Stelts v. Stelts*, 126 S.W.3d 499, 504 (Mo. App. S.D. 2004)).

[7] For the first time in his reply brief, Father raises the claims regarding M.S.'s diagnosis of ADHD and Mother's move as support for his claim in Point I. "Appellate courts are generally precluded from addressing assertions made for the first time in a reply brief because a respondent has no opportunity to address the argument." *Matter of Adoption of E.N.C.*, 458 S.W.3d 387, 394 (Mo. App. E.D. 2014) (internal quotations omitted). Accordingly, we will not address these alleged bases for a change in circumstance.

custodian and that the modification is necessary to serve the best interests of the child.'" *Russell*, 210 S.W.3d at 196 (quoting § 452.410.1) (emphasis added). Thus, in order for a fact to constitute a change in circumstances, it must have been unknown to the court at the time of the 2012 modification. There is conflicting evidence as to whether the trial court was aware of Mother's work schedule at the time of the 2012 modification and whether the schedule had changed since that time. There is also conflicting testimony regarding difficulties that arose during custody exchanges.

First, Father testified that M.S. had been diagnosed with ADHD after the 2012 modification. But Mother testified that M.S.'s diagnosis pre-dated the 2012 modification. Father also testified that Mother's work schedule had changed, requiring the use of babysitters, and that Mother did not have time to provide sufficient one-on-one interaction with M.S. to address his substantial social, emotional, and educational difficulties. But Mother testified that she has the same job that she had at the time of the 2012 modification and works substantially the same schedule. She also testified that Father raised identical issues relating to Mother's work schedule, as well as the fact that she relies on babysitters when she is at work and the children are not in school, at the trial for the 2012 modification.

Finally, Father identifies some instances when he argues Mother failed to cooperate in providing him visitation with the children. Father "is correct in pointing out that a custodial parent's interference with the visitation rights of the non-custodial parent can create a change in circumstances that may justify modification of custody," especially "where the evidence shows an unjustified and flagrant pattern of willful denial of visitation." *Huffman v. Huffman*, 11 S.W.3d 882, 886 (Mo. App. W.D. 2000). However, Mother provided testimony contradicting

10

Father's claims that she denied him visitation, painting instead a picture of Father intentionally making exchanges difficult so as to build a case that the parenting plan was not working.

Neither party requested findings of fact or conclusions of law. Accordingly, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c). "In light of our standard of review in child custody cases, we defer to the trial court's judgment and assessment of witness credibility." *Gaudreau v. Barnes*, 429 S.W.3d 429, 434 (Mo. App. E.D. 2014). Where there is conflicting evidence, "[t]hese principles weigh heavily against finding that the trial court's judgment was against the weight of the evidence," *id*., or was not supported by substantial evidence. We presume that the trial court believed Mother's testimony, which supported findings that (1) M.S.'s ADHD diagnosis was not "unknown to the court at the time of the" 2012 modification; (2) Mother's work schedule had not changed since the 2012 modification; and (3) Mother did not interfere with Father's visitation.

**B. The trial court did not err in finding that Father's remaining allegations do not amount to a change in circumstances sufficient to warrant considering whether modification is in the children's best interests.**

Father also points to a number of incidents which, he claims, show Mother's pattern of making unilateral decisions in violation of either the parenting plan's directive that they parent together or specific terms of the parenting plan, including: (1) terminating M.S.'s ADHD medication; (2) failing to ensure that the children called Father at designated times; and (3) changing the children's school arrangements, by removing the children from private school, enrolling the children in Mill Creek Elementary School, and briefly homeschooling the children in the fall of 2013.

First, Father claims Mother took M.S. off of his ADHD medication without first consulting Father. It is odd that Father would claim this as a change in circumstances warranting modification in light of the fact that Father testified that he agreed that M.S. should not be taking any medication, because "none of the medications he was taking . . . helped him." For Father to complain that he had insufficient input in decision-making, he must provide at least some evidence that, had he "participated in the decision-making . . . , different decisions would have been made." *Huffman*, 11 S.W.3d at 887.

Next, Father alleges that Mother interfered with his phone calls with the children. The 2012 modification requires that the children call Father at designated times. Mother acknowledged that, when she was working, she did not always give the children's caregivers express instructions about when the children were to call Father, although she claimed they were free to initiate such calls. Moreover, Mother testified that she made sure that the children called Father regularly, even though the calls did not always come at the times stated in the 2012 modification. The trial court was allowed to credit Mother's testimony, as well as to conclude that a technical violation of the parenting plan as to timing of phone calls between the children and Father did not result in a change in circumstances sufficient to warrant considering modification. However, the question remains whether this violation of the 2012 modification, in combination with other alleged violations, addressed *infra*, constitutes a change in circumstances sufficient to warrant considering modification.

What remains are Father's allegations relating to decisions Mother made affecting the children's schooling. First, Father alleges that Mother removed the children from the Islamic School without his input and in violation of the 2012 modification that expressly stated that the children were to continue to attend the Islamic School "until they are no longer able to attend due

12

to age." Mother testified that she feared that M.S. was failing at the Islamic School. Her testimony was corroborated by correspondence from the school, indicating that the school did not have a grade-appropriate classroom available for M.S. and could not meet his educational needs. Further, she claimed that Father was in violation of his obligation under the 2012 modification to pay the tuition for the private school. Mother testified that, pursuant to the 2012 modification, she attempted to communicate these concerns to Father, but it is uncontested that Father did not consent to removing the children from the school. Mother unilaterally determined that it was best to remove the children from the school in the fall of 2013. When Father refused to consent to enrolling the children in public school, and the Islamic School had already determined that it did not have appropriate placement for M.S., Mother unilaterally made the decision to homeschool the children for the remainder of the fall 2013 semester. In support of his claim that Mother's unilateral decisions regarding the children's education constitutes a change in circumstances sufficient to warrant considering modification, Father argues that these events demonstrate a breakdown in communication between the parents and reflect an inability on the part of the parents to work together, as well as a pattern on Mother's part of ignoring the trial court's 2012 modification.

Father correctly notes that a breakdown in communication and inability of the parents to work together can constitute a change in circumstances. "In a joint custody situation, breakdown of parental communication and cooperation is sufficient, in and of itself, to constitute a change in circumstances." *Keel v. Keel*, 439 S.W.3d 866, 876 (Mo. App. E.D. 2014) (quoting *Timmerman v. Timmerman*, 139 S.W.3d 230, 237 (Mo. App. W.D. 2004)). But here, the evidence is that parents have not communicated particularly well at any point. Indeed, in the 2012 modification, the court noted that Father and Mother "have had an acrimonious relationship" and that their

13

communication "worsened when [Father] relocated to the state of Indiana." Anticipating that the parents would have difficulty communicating constructively, the trial court directed them, in the 2012 modification, to communicate only by text or email. Under these circumstances, unless the alleged communication problems are different in kind or severity than those anticipated by the 2012 modification, they should not be considered a change of circumstances.

The trial court was free to credit Mother's testimony that she attempted to communicate with Father so that he could exercise his rights as joint legal custodian to "share in the decision-making rights, responsibilities, and authority relating to the . . . education . . . of the child[ren]." § 452.375.1(2). Further, the evidence was sufficient to support the trial court's finding that the parents' communication and cooperation had neither deteriorated from where it was previously, nor reached a point where it constituted a change of circumstance sufficient to justify considering modification. "This Court will not replace the trial court's view of the facts with that of our own unless we are left with a firm belief that the judgment was wrong. We harbor no such belief here." *Gaudreau*, 429 S.W.3d at 434.

Beyond communication problems, Father alleges that Mother's violation of the express terms of the 2012 modification constitutes a change in circumstance. Therefore, we must begin by determining the extent to which Mother violated the express terms of the 2012 modification. Although Mother consented to the entry of an order of contempt in response to her removal of the children from the Islamic School, and removal of S.S. was clearly a violation of the 2012 modification, it is not clear that removal of M.S. violated the 2012 modification, because the lack of a second grade classroom and the school's position that they were unable to meet M.S.'s educational needs might have qualified as M.S. "no longer being able to attend . . . due to age." Other actions of which Father complains, enrolling the children in Mill Creek Elementary School

14

and homeschooling them for a brief period, were direct consequences of Mother's decision to remove the children from the private school and Father's disagreement with that decision. Further, Mother's options as to M.S. in the fall of 2013 were limited in light of the fact that the Islamic School was unwilling to take him back.

When the Islamic School indicated that it could no longer meet M.S.'s educational needs and Father refused to consent to his removal from the school, Mother should have sought a modification of the 2012 order. Further, it is clear that Mother had no justification for removing S.S. from the private school. But these violations have been addressed through the contempt proceedings, and the parties ultimately arrived at a solution that they agreed was best for the children—M.S. would attend Mill Creek while S.S. would continue to attend the Islamic School, which she did until it no longer had a grade level for her. The question then is whether the trial court erred in finding that these violations of the 2012 modification, in combination with the technical violation of the 2012 modification's directions regarding phone calls, constituted a change in circumstances sufficient to warrant considering modification of the 2012 parenting plan.

In addressing whether a *substantial* change in circumstances has occurred, courts have held that "a *pattern* of ignoring the trial court's custody decree" can constitute a change in circumstances sufficient to support modification, but "not every violation of a custody decree should be viewed to . . . *per se*, warrant[] a modification of custody." *Heslop v. Sanderson*, 123 S.W.3d 214, 223 (Mo. App. W.D. 2003) (emphasis added). While we acknowledge that less significant violations of a decree would be sufficient to satisfy the lesser standard of a simple change in circumstances, isolated violations that do not have any effect on the moving parent's

parental rights or relationship with the children are still insufficient to meet the threshold requirement for modification.

The trial court is entitled to broad deference in matters of custody, "and we must affirm its decision unless we are firmly convinced that the welfare and best interests of the child require otherwise." *Scherder v. Sonntag*, 450 S.W.3d 856, 861 (Mo. App. E.D. 2014). We hold that the trial court's determination that Father failed to meet his burden to prove that there was a sufficient change in circumstances to warrant consideration of modification under § 452.410.1 was neither against the weight of the evidence nor a misapplication of the law.

### C. Because the trial court determined that there was no change of circumstances, it was not required to make best interest findings.

In his second point on appeal, Father argues that the trial court erred in not making findings of fact in accordance with § 452.375.6, detailing why his modification proposal was not in the children's best interests. But, because the trial court determined that there was not a change in circumstances sufficient to support considering modification, it was not required to reach the issue of best interests. "If the trial court does not find a [] change of circumstances, it never reaches the best interests issue." *J.T.P.*, 440 S.W.3d at 501 (quoting *Hall v. Hall*, 345 S.W.3d 291, 296 (Mo. App. S.D. 2011)).

Father's Points I and II are denied.

### II. The trial court did not err in determining that Father had not made a showing of changed circumstances to support a modification of child support.

Finally, Father argues that the trial court erred in not modifying the amount of child support he pays to Mother because Father's Form 14 demonstrated a substantial and continuing change of circumstance.

16

"Section 452.370 provides that a trial court may modify the provisions of a child support decree 'only upon a showing of changed circumstances so substantial and continuing as to make the terms [of the original award] unreasonable.'" *Breuer v. Breuer*, 449 S.W.3d 409, 413 (Mo. App. E.D. 2014) (quoting § 452.370.1). "Under Section 452.370, the party seeking modification makes a prima facie showing of a change in circumstance where the application of the child support guidelines results in a change from the existing amount by twenty percent or more." *Id.* at 413-14. "Once the party seeking modification has met this burden, the court then determines the child support amount 'in conformity with criteria set forth in section 452.340 and applicable supreme court rules.'" *Bearce v. Lewey*, 182 S.W.3d 737, 742 (Mo. App. W.D. 2006) (quoting § 452.370.2).

There is no doubt that Father's current payment for child support deviates by more than twenty percent from the presumed child support amount in the Form 14 that Father filed with his motion to modify. And this would normally be sufficient to "establish[] a prima facie case of substantial and continuing change in circumstances." *Breuer*, 449 S.W.3d at 414; Rule 88.01(b)[8] ("There is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the correct amount of child support to be awarded in any judicial or administrative proceeding."). But the rule only applies to "a correctly calculated Form . . . 14." Rule 88.01(b). Here, Father testified that his Form 14 calculations, and request to modify, were based on the assumption that Father would receive primary custody of the children during the school year. In other words, Father's proposed Form 14 is based on the assumption that the trial court would grant his motion to modify the parenting time schedule and residential designation, which it did not. An incorrect Form 14 cannot support the modification of child support. *Stroh v. Stroh*, 454 S.W.3d 351, 362 (Mo. App. S.D. 2014). Accordingly, the trial court did not err in

---

[8] Rule citations are to the Missouri Supreme Court Rules (2015).

finding that Father had failed to prove a substantial and continuing change in circumstances required to justify the modification of child support payments.

Point III is denied.

_____
Karen King Mitchell, Judge

Alok Ahuja, Chief Judge, and Mark D. Pfeiffer, Judge, concur.