

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| SEAN WIGGLESWORTH, | ) | No. ED106405 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable John R. Essner |
| MARIE WIGGLESWORTH, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 30, 2019 |

### Introduction

Marie W. Wigglesworth ("Mother") appeals from the trial court's judgment ("2018 Modification Judgment") awarding custody of her minor child ("Daughter") to Sean C. Wigglesworth ("Father"). Mother raises four points on appeal. In Point One, Mother contends that the trial court erred in modifying custody from the preceding consent judgment (the "2014 Judgment") because res judicata barred the trial court from finding a change in circumstance resulting from the reversal of the Children's Division's findings that Father abused Daughter. Because the reversal of the Children's Division's findings regarding the alleged abuse occurred before Father consented to the entry of the 2014 Judgment, the trial court erred in treating the reversal of the abuse findings as a change in the circumstance warranting modification of the 2014 Judgment under Section 452.410.1.[1] Further, the record firmly suggests that the trial court

---

[1] All statutory references are to RSMo (2016), unless otherwise indicated.

treated Mother's adherence to the restrictive visitation provisions of the 2014 Judgment as an unwillingness to co-parent and obtain Father's input on legal custody decisions, each of which the trial court misconstrued as violations of the 2014 Judgment. The record fails to persuade us that the trial court found any substantial change of circumstance to support the change of custody effected by the 2018 Modification Judgment. Accordingly, we remand this matter to the trial court to reconsider whether Father has met his burden under Section 452.410.1 to prove the substantial change in circumstance to warrant custody modification.

Factual and Procedural History

Mother and Father divorced in 2011. In the original judgment (the "2011 Judgment"), the trial court awarded joint legal custody of Daughter, then two-years old, and awarded sole physical custody to Mother with alternating weekend visitation to Father.

In 2013, the Warren County Children's Division ("Children's Division") was made aware of allegations that Father had sexually abused Daughter. After investigating the allegations, an order of child protection was entered against Father based upon the Children's Division's findings that Father had abused Daughter. Father and Mother each moved to modify the 2011 Judgment. At Father's request, the trial court consolidated the child protection case and the modification case. During the modification proceedings, Father sought review of the Children's Division's findings by the Child Abuse and Neglect Review Board ("CANRB"). On April 21, 2014, the CANRB reversed the Children's Division's findings of abuse by Father.

Father consented to the entry of a consent judgment issued on July 22, 2014. The 2014 Judgment stipulated to the termination of the order of child protection, awarded Mother sole physical and legal custody, and instituted a highly restrictive parenting plan. In particular, the 2014 Judgment provided that Daughter should *never* be alone with Father and restricted Father to supervised visitation with numerous constraints on physical contact. The 2014 Judgment

2

obligated Mother to notify Father of any public activities at school and permitted Father to attend such public events. Under the provisions for legal custody, the 2014 Judgment gave Mother final authority on all issues affecting the growth and development of Daughter, including—but not limited to—choice of religious upbringing, child care and health care providers, school, special tutoring, extracurricular activities, travel, employment, purchase or operation of a motor vehicle, contraception and sex education, legal decisions, as well as non-emergency medical, dental, psychological, and psychiatric treatment and counseling. The 2014 Judgment required Mother to inform Father of changes to the above legal custody issues. The 2014 Judgment directed Mother to consult Father and seek his input only for major changes, such as changing religions, electing to home school, or authorizing elective surgery. The 2014 Judgment additionally required Father to pay periodic child support and expenses for Daughter's counseling. Father did not appeal the 2014 Judgment.

On November 14, 2016, Father moved to modify the 2014 Judgment. Father sought joint legal and physical custody, modification of the parenting plan, and a reduction in child support. During the modification proceedings, the trial court issued a series of interim orders in which it appointed a guardian ad litem ("GAL") for Daughter, ordered Mother to arrange counseling for Daughter, and expanded Father's visitation and custody scheduling with Daughter.

On December 11, 2017, Father's motion to modify was heard before the family court Commissioner. The GAL participated in the hearing by cross-examining both Father and Mother. Evidence adduced at the hearing included Mother's relocation with Daughter due to a job change to Chamois, Missouri in September 2014. Mother did not notify Father sixty days in advance as required by the 2014 Judgment. Chamois is located several hours from St. Louis County, and the distance brought challenges to Father's ability to visit Daughter. During the

3

hearing, Mother cross-examined Father regarding his consent to the entry of the 2014 Judgment after CANRB had reversed the abuse findings against him. The Commissioner informed the parties that the 2014 Judgment would be taken at its face as a consent judgment pursuant to the record, and directed the parties to address whether a change in circumstances occurred *after* the 2014 Judgment to warrant custody modification.

After the hearing, the GAL filed a proposed parenting plan recommending joint legal and physical custody as well as transferring residential custody of Daughter to Father and giving Mother alternate weekends. Mother also submitted a parenting plan, which proposed joint legal and physical custody but sought to maintain Daughter's residential custody with Mother.

The trial court thereafter approved and adopted the Commissioner's findings and recommendations in the 2018 Modification Judgment. The 2018 Modification Judgment adopted the GAL's proposed parenting plan transferring Daughter's residential custody to Father and giving Mother alternating weekends during the school year. The trial court found there was little support for the restrictive supervised visitation set forth in the 2014 Judgment given the reversal of the abuse findings. The trial court also found that Mother relocated without proper notification and obstructed Father's attempts to visit Daughter in spite of the reversal of the abuse findings. The trial court further concluded Mother failed to demonstrate a willingness to co-parent and obtain Father's input on legal custody decisions—in particular, allowing Daughter to purchase a phone with which to play games and obtaining additional math tutoring for Daughter. Lastly, the trial court found Mother did not promptly comply with the interim orders to enroll Daughter in counseling.

4

Mother moved for a hearing before a family court judge and to reopen evidence on the basis of post-trial conduct by Father relevant to the custody award. The trial court denied both Mother's motions. Mother now appeals the 2018 Modification Judgment.

## Points on Appeal

Mother raises four points on appeal from the trial court's 2018 Modification Judgment transferring Daughter's residence to Father. In Point One, Mother argues that res judicata barred the trial court from modifying custody of Daughter when it found there was no basis to continue Father's restricted visitation rights ordered by the 2014 Judgment. In Point Two, Mother alleges the trial court erred in adopting the GAL's proposed parenting plan and giving "great weight" to the GAL's recommendation. Specifically, Mother contends that the GAL filed only a parenting plan, not a separate recommendation, and the GAL's performance was statutorily deficient in that the GAL failed to adduce evidence, adequately investigate the case or the abuse allegations, inform the trial court of Daughter's wishes, or visit Mother's home where Daughter was living. In Point Three, Mother claims the trial court erred in refusing to reconsider the judgment in light of new evidence of Father's post-trial conduct that was relevant to the custody award. Lastly, in Point Four, Mother contends the trial court's finding that Mother failed to abide by the interim orders to cooperate in counseling was not supported by sufficient evidence.

## Standard of Review

We review a judge-tried case to determine whether the trial court's judgment is unsupported by substantial evidence, against the weight of the evidence, or erroneously declares or misapplies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). In child custody cases, we give greater deference to the trial court's judgment than in other cases. Morgan v. Morgan, 497 S.W.3d 359, 363 (Mo. App. E.D. 2016). "Our role is to determine whether the record contains sufficient evidence to support the trial court's assessment, accepting all evidence

5

and inferences favorable to the judgment." J.T.P. v. P.F., 440 S.W.3d 497, 501 (Mo. App. E.D. 2014). However, we will reverse the trial court's custody determination when we are "firmly convinced [the judgment] is erroneous and the award is against the child's best interests." Morgan, 497 S.W.3d at 363.

Discussion

**I.      Point One—Res Judicata**

Mother's first point on appeal challenges the trial court's transfer of custody of Daughter to Father because res judicata barred the trial court from modifying custody based on a change in circumstance that occurred prior to the 2014 Judgment. Specifically, Mother maintains that the trial court improperly relied upon the CANRB reversal of the abuse findings against Father to support its finding of changed circumstances because the CANRB reversal occurred before the entry of the 2014 Judgment, and Father did not prove any other substantial change in circumstance supporting a custody modification.

While cognizant of our deferential standard of review in determining whether the record contains sufficient evidence to support the trial court's assessment, we are persuaded that the trial court erred when modifying the 2014 Judgment because it based its judgment upon a changed circumstance that occurred *prior* to the 2014 Judgment. In doing so, the trial court acted contrary to the doctrine of res judicata. See Section 452.410.1; Noakes v. Noakes, 168 S.W.3d 589, 595 (Mo. App. W.D. 2005). Particularly, the record shows that the trial court improperly relied upon the April 2014 CANRB reversal of the abuse findings against Father as the changed circumstance satisfying the threshold requirement of Section 452.410.1.

Before it may modify custody, a trial court must initially find that a change in circumstances has occurred. Section 452.410.1; see J.T.P, 440 S.W.3d at 501. Specifically, a trial court

6

shall not modify a prior custody decree unless . . . it finds, ***upon a basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree***, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

Section 452.410.1 (emphasis added). "The finding of a change in circumstances is a threshold matter;" *only if* the trial court finds that a change of circumstances has occurred may it then determine whether a modification of the prior judgment is in the child's best interests using the factors in Section 452.375. Tienter v. Tienter, 482 S.W.3d 483, 488–89 (Mo. App. E.D. 2016); Ndiaye v. Seye, 489 S.W.3d 887, 892 (Mo. App. W.D. 2016).

The party seeking to modify custody, here Father, bears the burden to prove a change in circumstances. C.C. v. J.A.C., 499 S.W.2d 809, 812 (Mo. App. K.C.D. 1973). And if the proposed modification "seeks a drastic change in the custodial arrangement, then a substantial change in circumstances is required." Tienter, 482 S.W.3d at 490 (citing Russell v. Russell, 210 S.W.3d 191, 197 (Mo. banc 2007)). It is well settled that with regard to a modification of residential custody, "[i]f the trial court does not find a substantial change of circumstances, it never reaches the best interests issue." J.T.P., 440 S.W.3d at 501 (finding no basis for modifying the child's residential custody where the trial court found no change in circumstance since the preceding judgment).

The changed-circumstance threshold for modifying custody stems from principles of public policy and "of res judicata and the concern for finality of judgments." Morgan, 497 S.W.3d at 366 (quoting Russell, 210 S.W.3d at 197). In child custody modification proceedings, the doctrine of res judicata precludes relitigation of facts and issues that were adjudicated under or prior to the preceding custody judgment. Hermann v. Heskett, 403 S.W.3d 136, 141 (Mo. App. E.D. 2013); Noakes, 168 S.W.3d at 595. Mere scheduling adjustments within a joint

7

custody situation do not warrant rigid application of res judicata principles. Russell, 210 S.W.3d at 197. In contrast, extensive modifications to physical custody arrangements implicate res judicata because those modifications contradict the continuity we value for children. Morgan, 497 S.W.3d at 366. Significant changes in custody implicate res judicata principles in applying Section 452.410.1 standards. See Tienter, 482 S.W.3d at 490 (citing Russell, 210 S.W.3d at 197). Res judicata further precludes a party seeking to modify custody from collaterally attacking the prior judgment, except on direct appeal. Noakes, 168 S.W.3d at 595, 597–98; cf. Cooper v. Cooper, 893 S.W.2d 839, 842 (Mo. App. S.D. 1995) (holding that the parent who did not appeal the prior judgment could not move to modify it based on an alleged mistake in the judgment); Gori v. Gori, 490 S.W.2d 282, 284 (Mo. App. S.L.D. 1973) (same).

Here, the 2018 Modification Judgment granted Father's motion to modify the 2014 Judgment. Under the 2014 Judgment, Mother had sole legal and physical custody of Daughter. The 2018 Modification Judgment awarded joint legal and physical custody as well as transferred residential custody of Daughter from Mother to Father. In order to modify the 2014 Judgment, Father must have shown a change in circumstances since the 2014 Judgment. Section 452.410.1. Notably, that change must be substantial because the trial court reversed Mother's sole custody and removed Daughter from the home where she lived with Mother from approximately age five to age nine. Tienter, 482 S.W.3d at 490 (citing Russell, 210 S.W.3d at 197); J.T.P., 440 S.W.3d at 501; see also J.D.W. v. V.B., 465 S.W.3d 82, 86 (Mo. App. E.D. 2015).

Our gravest concern with the 2018 Modification Judgment is the trial court's apparent reliance on CANRB's reversal of the Children's Division's findings that Father abused Daughter for its changed-circumstance determination. The record clearly shows that the CANRB reversal occurred in April 2014, several months *prior* to the 2014 Judgment. A review of the record

8

demonstrates that the CANRB reversal of the abuse findings played a decisive role in the trial court's factual findings and entry of the 2018 Modification Judgment. The 2018 Modification Judgment conveys to us that the foremost change supporting custody modification was the reversal of Father's abuse findings. The record strongly suggests that the trial court's conclusion that the CANRB reversal of the abuse findings made the restrictive provisions of the 2014 Judgment no longer supported nor appropriate contributed to its findings regarding Mother's unwillingness to co-parent. The critical failure in the trial court's analysis is that the CANBR reversal cannot support a finding of a changed circumstance under the threshold requirement of Section 452.410.1, because the CANRB reversal *preceded* the 2014 Judgment. The fact that Father may have been cleared of any allegations of abuse by the CANRB was not a change in circumstances that arose after the prior judgment, and thus it cannot be the basis for modifying custody. See Section 452.410.1; Ndiaye, 489 S.W.3d at 895; Tienter, 482 S.W.3d at 488–89; J.T.P., 440 S.W.3d at 501.

Also critical to our holding is Father's failure to show that the CANRB reversal was unknown to the trial court when it entered the 2014 Judgment. See Section 452.410.1 (providing a trial court may consider only "facts that have arisen since the prior decree *or that were unknown to the court at the time of the prior decree*"); see also Ndiaye, 489 S.W.3d at 895. In the proceedings leading up to the 2014 Judgment, Father and Mother attended multiple hearings, set the cause for trial, then informed the trial court that they had settled and were preparing to submit their plans for the trial court's approval. The record shows that Father requested the trial court consolidate the custody modification proceeding with the child protective order proceedings relating to the abuse allegations. The record shows that the trial court was aware of all the relevant facts relating to the allegations of abuse, the initial Children's Division's findings

9

of abuse and the CANBR reversal of those findings. The trial court issued its 2014 Judgment having found Father's and Mother's affidavits sufficient to allow it to determine that a change in circumstances occurred, such that giving Mother sole legal and physical custody was in the best interests of Daughter. See In re Marriage of Hendrix, 183 S.W.3d 582, 591 (Mo. banc 2006) (noting the trial court, not the parties, determines what custody arrangement is in the best interests of the child); see also Blackburn v. Mackey, 131 S.W.3d 392, 399 (Mo. App. W.D. 2004) (noting a trial "court in a dissolution or modification case is not bound by the terms of an agreement between the parties with regard to custody, support, or visitation of children").

Despite the CANBR reversal of abuse findings, Father waived any right to appeal the 2014 Judgment and its highly restrictive custody provisions that precluded him from being alone with Daughter or to be in close physical contact with her for a prolonged period. See Noakes, 168 S.W.3d at 598.[2] The trial court found Father's testimony credible as to the reasons he consented to the restrictive supervised visitation under the 2014 Judgment—that Father could no longer afford to pay an attorney to litigate the matter pending at the time. However, even accepting Father's explanation as true, the long-standing principles of res judicata preclude him from changing his decision—however well-reasoned or sympathetic—to waive any right to appeal the 2014 Judgment by now collaterally attacking its underpinnings. Id. at 595, 598; Morgan, 497 S.W.3d at 366.[3]

---

[2] It is generally held that a judgment, order, or decree entered by consent of the parties cannot be appealed, for it is not a judicial determination of rights, but a recital of an agreement. Thus, a party is estopped or is deemed to have waived his right to appeal when a judgment, order, or decree was entered at his request. Stucker v. Stucker, 558 S.W.3d 119, 121 (Mo. App. E.D. 2018) (internal citations omitted).

[3] The general principles in regard to collateral attacks upon judgments apply to consent judgments. Consent judgments are conclusive of matters adjudicated and are not subject to collateral attack except upon jurisdictional grounds. Household Finance Corp. v. Jenkins, 213 S.W.3d 194, 196 (Mo. App. E.D. 2007) (internal citations omitted).

10

We also emphasize the Commissioner's unambiguous affirmation of the proper standard for custody modification at the hearing. When the issue of the restrictive custody and visitation provisions arose in this matter, the Commissioner correctly stated that the 2014 Judgment could not be relitigated, especially noting that the 2014 Judgment would be taken at its face and that the purpose of the hearing was to address any subsequent change in circumstances that would warrant its modification. While the record accurately states the principle of res judicata to be applied with respect to the 2014 Judgment, the trial court's actions ignore this well-established doctrine and, in doing so, erred. The 2018 Modification Judgment is a marked departure from the principle of res judicata because the judgment is precariously perched upon the crumbling foundation of an improper collateral attack of the 2014 Judgment. The 2018 Modification Judgment repeatedly chastises Mother for restricting Father's visitation *despite the reversal of the abuse findings*. Such admonition directly contradicts the Commissioner's clear mandate that Father must demonstrate that a change in circumstance occurred *since* the 2014 Judgment to support modification.

The trial court erred in finding that the CANBR reversal of the abuse findings provided the substantial change in circumstances allowing modification of the 2014 Judgment. Accordingly, we now consider whether the record contains evidence of a substantial change in circumstances, other than the CANRB reversal, that could support the 2018 Modification Judgment. See Ndiaye, 489 S.W.3d at 898; Heslop v. Sanderson, 123 S.W.3d 214, 221 (Mo. App. W.D. 2003). In this endeavor, we are unable to discern findings sufficient to support the 2018 Modification Judgment which are not inexorably intertwined with the trial court's findings tied to the 2014 Judgment. The 2018 Modification Judgment is replete with references to the unfairness and flaws of the highly restrictive provisions contained in the 2014 Judgment. Even if

11

we were to acknowledge a fundamental unfairness of the 2014 Judgment to Father, the trial court nevertheless was barred by res judicata from relying upon such unfairness or flaws to find the change in circumstances required to modify custody. Section 452.410.1; Noakes, 168 S.W.3d at 595. The thread woven throughout the trial court's findings supporting the 2018 Modification Judgment is Mother's unwillingness to allow Father visitation beyond the express terms of the 2014 Judgment despite the CANBR reversal of the abuse findings. As noted above, such evidence cannot support a change in circumstances to support the significant modification to custody. See Ndiaye, 489 S.W.3d at 895; Tienter, 482 S.W.3d at 488–89; J.T.P., 440 S.W.3d at 501.

Looking beyond evidence relating to the abuse allegations and CANBR reversal, we consider whether Mother's relocation to Chamois, Missouri may properly support the 2018 Modification Judgment. The trial court found that Mother relocated her residence without proper notification and further obstructed Father's visitation. Although the trial court found Mother violated the sixty-day notification requirement when she moved to Chamois in September 2014, and violating a relocation notification provision may be deemed a change of circumstance under Section 452.410, that violation alone is not necessarily a substantial change in circumstance to modify custody. See Heslop, 123 S.W.3d at 223; Ndiaye, 489 S.W.3d at 898; Smith v. Smith, 75 S.W.3d 815, 821 (Mo. App. W.D. 2002) ("A residential change of the custodial parent to a distant location away from the non-custodial parent does not, by itself, establish that modification of the prior decree is appropriate."). Moreover, while the trial court found that the distance between Chamois and St. Louis County prompted struggles over finding a mutually satisfactory exchange location for Father's supervised visitations, Father never sought to block the relocation when he learned of it, but waited approximately two years after Mother moved

12

before filing his motion to modify. See Weaver v. Kelling, 53 S.W.3d 610, 616 (Mo. App. W.D. 2001) ("The purpose of the notice provision . . . is to give a party entitled to custody or visitation of the child the opportunity to challenge the relocation by filing a motion seeking an order to prevent the relocation.").

Next, the 2018 Modification Judgment focuses much attention on Mother's post-relocation conduct in not facilitating Father's visitation attempts by taking Daughter home immediately after school activities without providing Father a chance to spend additional time with Daughter. While we may share the trial court's concern and admonition of Mother for such conduct, Mother's actions were wholly consistent with the terms of the 2014 Judgment. Taking Daughter home directly after school activities did not violate the 2014 Judgment, which only allowed Father to attend events at school that were open to the public. The 2014 Judgment contained no provisions requiring Mother to provide Father with additional time with Daughter either before or after school activities. Further, the 2014 Judgment prohibited Father from having alone-time with Daughter and required the presence of a designated supervisor. The trial court characterized Mother's adherence to the restrictions of the 2014 Judgment—rather than unilaterally modifying its visitation provisions to better accommodate Father—as a violation of the 2014 Judgment. We are unwilling to hold that Mother's adherence to the express terms of the consent judgment constitutes a substantial change in circumstances sufficient to modify that judgment.

We next review the trial court's finding that Mother failed to demonstrate a willingness to co-parent and obtain Father's input on legal custody decisions as a potential basis for supporting the custody modification. This finding may provide the trial court with an appropriate basis for finding the substantial change required to support the custody change of the 2018 Modification

13

Judgment. However, the trial court's repeated reference to Mother's unwillingness to expand the visitation allowed Father under the 2014 Judgment undermines our confidence in the trial court's findings regarding co-parenting. The record suggests that the trial court may have misconstrued Mother's obligations under the 2014 Judgment. The 2014 Judgment gave Mother sole legal custody of Daughter. Even accepting the factual findings of the trial court that, without consulting Father, Mother permitted Daughter to purchase a phone and provided Daughter extra help when she was struggling in math (for which she earned a grade of a B+), Mother was authorized to make such decisions without Father's input under the 2014 Modification Judgment, as well as under the interim temporary custody orders (which expanded visitation scheduling but made no alterations to legal custody matters). While failing to solicit input from a co-parent as required under a custody judgment in some circumstances may support finding a change in circumstances to modify custody, the trial court's reasoning fails because neither the 2014 Judgment nor any interim order required Mother to seek or heed Father's input on such non-emergency matters. See Ndiaye, 489 S.W.3d at 898. Rather, the 2014 Judgment directed Mother to seek Father's input only on major changes, such as converting religions, electing to home school, and authorizing non-emergency surgery. The 2014 Judgment gave Mother full decision-making authority over all issues affecting Daughter's growth and development, including special tutoring. Thus, we reject the trial court's determination that Mother violated the 2014 Judgment by allowing Daughter to purchase a phone without Father's input.

Similarly, we find unavailing any argument that Mother's delay in enrolling Daughter in counseling supplied a sufficient change in circumstances to support a modification in custody. Preliminarily, under the 2014 Judgment, Mother retained sole decision-making for non-emergency medical, dental, psychological, and psychiatric treatment and counseling. In 2017,

14

the trial court issued an interim order for Mother to provide Daughter with counseling. Although Mother delayed obtaining counseling for five or six months, Daughter was receiving counseling at the time the trial court issued the 2018 Modification Judgment. We accept the trial court's rejection of Mother's account of her good-faith attempts to get Daughter into counseling in a timely manner in response to the trial court's interim orders. But, even accepting the credibility determination of the trial court, Mother's delay in arranging counseling for Daughter is not a substantial change in circumstance supporting a modification of custody that removed Daughter from her established home with Mother. See J.T.P., 440 S.W.3d at 501.

We fully understand that a trial court must compile certain essential facts from prior judgments in order to effectively and reasonably evaluate whether a change in circumstances has occurred. See C.C., 499 S.W.2d at 812 (distinguishing improper retrying or rehashing of facts from understanding the circumstances of the prior judgment). However, it appears that the trial court went beyond that. Here, the trial court disregarded well-established principles of res judicata by relying almost exclusively on the CANBR reversal of the abuse findings to conclude that substantial changed circumstances existed to support the modification of the 2014 Judgment. See J.T.P., S.W.3d at 501; Noakes, 168 S.W.3d at 595. Because the CANBR reversal is not a changed circumstance—given that it was neither a fact arising since the 2014 Judgment nor unknown to the trial court at the time of the 2014 Judgment—we are left with the firm belief that remand is necessary to allow the trial court to properly assess whether Father met his burden to show a change in circumstances *following the 2014 Judgment*. Section 452.410.1. Therefore, we remand the matter to the trial court to clarify and reconsider its judgment and findings as to the required change in circumstance, given that the issues of Mother's relocation and delay in

15

enrolling Daughter in counseling alone do not meet the threshold requirement of Section 452.410.1.

We need not address Mother's other points on appeal, as our holding on Point One is dispositive.

Conclusion

The judgment of the trial court is reversed and remanded in accordance with this decision.

KURT S. ODENWALD, Presiding Judge

Gary M. Gaertner, Jr., J., concurs.
Colleen Dolan, J., concurs.